THE STATE OF IOWA, Appellee, v. JAMES O. DOOLEY, Appellant.

1. Jurors: EXAMINATION OF: PEREMPTORY CHALLENGE. In view of the provisions of section 2, of chapter 165, of Acts of the Seventeenth General Assembly, as amended by section 2, of chapter 2, of Acts of the Eighteenth General Assembly, requiring the jury upon the trial of an indictment for murder, if they find the defendant guilty of murder in the first degree, to designate in their verdict whether he shall be punished by death or imprisonment for life in the penitentiary, the state may properly be permitted, upon the impaneling of the jury, to inquire of the individual jurors, for the purpose of peremptory challenge, whether they have any conscientious scruples against the infliction of the death penalty.

2. Murder: EVIDENCE OF SIMULTANEOUS ASSAULT UPON ANOTHER. The defendant was indicted for the murder of a girl ten years of age, whose body was found with that of her mother, who had also been murdered, lying upon a bed at their residence, the mother's under-clothing bearing evidence of an assault. *Held*, that the state was entitled to show in connection with the situation of the body of the child, the condition of the body of the mother when found, and of the clothing upon it, in order that the connection of the defendant with the crime of which he was accused, the circumstances under which it was committed, and the motives which prompted it, might be more fully understood.

3. ———: INDICTMENT: SUFFICIENCY. An indictment charging that the defendant willfully and feloniously, deliberately, premeditatedly and of his malice aforethought, did commit an assault with deadly weapons, upon the body of a person named, and with specific intent to kill and murder such person, did willfully, feloniously, deliberately, premeditatedly, and of his malice aforethought, strike and beat said person upon the head and body with an unknown weapon, and did shoot off and discharge the contents of a pistol into the head and body of said person, thereby willfully, feloniously, deliberately, premed-

itatedly, and, of his malice aforethought, inflicting upon the head and body of said person a mortal wound, of which she died, and which charges that said acts were committed by "lying in wait," sufficiently charges murder in the first degree.

4. ———: INSTRUCTIONS TO JURY: CONSTRUCTION. An instruction in such case that before the defendant could be convicted "of the crime charged in the indictment" the state must prove certain facts specified beyond a reasonable doubt, is not objectionable as referring the jury to the indictment for information in regard to the offense charged.

5. ———: ———: LAW AS TO PARDONS. Upon the trial of an indictment for murder in the first degree the accused is not entitled to have the jury instructed in regard to the law of pardons applicable to persons convicted of such offense.

6. ———: SUFFICIENCY OF EVIDENCE TO SUPPORT VERDICT. The defendant resided on a farm with his uncle, who, on the day of the murder, had left home early in the morning, leaving his wife and daughter, a girl of ten years, and the defendant on the farm. From a confession made by the defendant to the reporter of a newspaper, it appeared that, after his uncle's departure, the defendant was scolded by his aunt for allowing the cattle to get into a neighbor's field, at which he became angry, and went to town and purchased a revolver. At the dinner table his aunt again scolded him for neglecting the cattle, and they quarreled for some minutes. After dinner, his aunt having begun again to scold him, the defendant took a padlock from his pocket, which he had picked up in the yard, struck his aunt twice with it on the head, knocking her down, and then shot her. Afterward the little girl, for the murder of whom the defendant was indicted, came running in from the barn, and, as she passed through the door the defendant struck her on the head with the padlock, knocked her down, and then shot her in the forehead. Having placed the bodies on the bed, the defendant took a satchel, with clothing, locked the house, harnessed a team to a buggy, and drove away. The defendant claimed that he purchased the revolver to practice with, and at the time had no intention of shooting any one, an l that he had not felt any improper desires towards his aunt nor his cousin. The confession contained many statements shown to be false, and it was uncertain how much of it was true, but the defendant admitted the unlawful killing of his cousin upon the trial, and, taking the confession with other evidence in the case, the jury were warranted in finding the facts substantially as above stated. *Held,* that a verdict of murder in the first degree was supported by the evidence.

7. ———: PUNISHMENT FIXED BY VERDICT: CHANGE ON APPEAL. The defendant was only sixteen years old at the time of the murder, and previous to that time had been a quiet, well behaved boy, favorably

regarded by those who knew him, and there was no evidence, except the crimes in question, that he was of a depraved nature, though inferior in average development to other boys of his age. *Held*, that the punishment of death, as fixed by the verdict of the jury, being authorized by the evidence, the above facts as to the character of the defendant were not sufficient to warrant the interference of the supreme court in changing the punishment to be inflicted.

*Appeal from Adams District Coart.*—Hon. H. M. Towner, Judge.

Tuesday, January 16, 1894.

The defendant was charged by indictment with the crime of murder, was tried by jury, found guilty of murder in the first degree, and the punishment designated in the verdict was death. From the judgment rendered on the verdict, fixing the date of his execution on the sixteenth day of June, 1893, the defendant appeals.—*Affirmed.*

*Dale & Brown*, for appellant.

*John Y. Stone*, Attorney General, and *Thomas A. Cheshire*, for the state.

Robinson, J.—At about 7 o'clock in the morning of May 11, 1892, W. H. Coons, went from his home, which was between one half and three quarters of a mile southwest of the town of Prescott, leaving there his wife, Lucinda; his daughter, Nellie, ten years of age; and his nephew, the defendant, sixteen years of age. At 5 o'clock in the afternoon of the next day, he returned, and found the house closed and locked. He succeeded in entering it, and found lying on a bed the lifeless bodies of his wife and daughter. They had been murdered, and appearances indicated that they had been dead from twenty-four to thirty-six hours when their bodies were found. The underclothing of the mother was in such disorder as to indicate that an assault before the murder may have been attempted. The nephew was absent and had taken a

team, buggy, and some clothing, and other articles, which he did not own. Late in the evening of the twelfth day of May, he was arrested in Villisca. His indictment and conviction were for the murder of his cousin, Nellie Coons.

I. Section 2 of chapter 165 of the Acts of the Seventeenth General Assembly, as amended by section

1. JURORS: examination of: peremptory challenge.

2 of chapter 2 of the Acts of the Eighteenth General Assembly contain the following: "Upon the trial of an indictment for murder the jury, if they find the defendant guilty of murder in the first degree, must designate in their verdict whether he shall be punished by death or imprisonment for life at hard labor in the penitentiary." During the impaneling of the trial jury the state was permitted to ask certain persons, who were retained as members of the jury, whether they had any conscientious scruples against the infliction of the death penalty. The defendant objected to the questions as "incompetent, immaterial, and irrelevant, and not a statutory ground for challenge." The objections were overruled, and of that ruling the appellant complains. The questions were not allowed on the theory that the answer might disclose ground for challenge for cause, and much that is said in argument, and most of the authorities cited by appellant on that point, are wholly irrelevant to the question presented. He does not deny that peremptory challenge may be made by the state and by the defendant without the assignment of any cause, but insists that the right to examine persons called to act as jurors in regard to their qualifications is limited to the statutory grounds for challenges for cause. Section 4407 of the Code, relied upon by appellant to sustain his claims, is as follows: "4407. Upon the trial of a challenge to an individual juror, the juror challenged may be examined as a witness to prove or disprove the challenge, and must answer every

question pertinent to the inquiry thereon, but his answers shall not afterward be testimony against him." That section refers exclusively to challenges for cause, and has no relation to peremptory challenges. It is the general and well established practice to allow both to the state and to the defendant considerable latitude in the examination of persons called to act as jurors, not only to facilitate the discovery of grounds for challenge for cause, but to enable the parties interested to discover any peculiarity or conduct, association, character, or opinion, or any predilection, of the person under examination, or other circumstances which, in the opinion of the examiner, might influence the person as a juror, and affect his verdict. It is well known to persons familiar with jury trials that jurors are frequently influenced in reaching a verdict by considerations which have no legitimate application in the case. The right of peremptory challenge gives the means of keeping from the jury persons of that kind, which the challenge for cause does not afford, and parties should be permitted to examine persons called to act as jurors, within reasonable limits, to the end that the peremptory challenges may be used intelligently. It was the privilege of the state to exclude from the jury, so far as its right to peremptory challenges extended, all persons who were prejudiced against the infliction of the death penalty; and it was not an abuse of the right of examination to permit inquiry as to the views of the persons summoned as jurors on that point. The objections to questions under consideration were, therefore, properly overruled.

II. The appellant complains that the state was permitted to prove, not only the condition in which the body of Nellie Coons was found, but also the condition of the body of her mother, and of the clothing upon it, on the ground that the effect of permitting such evidence

2. MURDER: evidence of simultaneous assault upon another.

to be introduced was to put him upon trial for an assault upon the mother, and the murder of both the mother and child. We do not think the complaint is well founded. The state was entitled to show the condition in which the body of the child was found, and its surroundings, and, incidentally, that of the mother, in order that the connection of the defendant with the crime of which he was accused, the circumstances under which it was committed, and the motives which prompted it, might be more fully understood; and the fact that, in proving those matters, another crime would necessarily be shown, did not affect the right of the state to introduce the evidence in question.

III. The evidence shows that there were two wounds on the head of Nellie Coons, one on the back of it, caused by a blow with some instrument, and a pistol-shot wound in the forehead, and that the latter probably caused her death. The appellant contends that the indictment does not sufficiently charge murder in the first degree, committed by the pistol shot, in that it does not allege that the shot was fired willfully, and with deliberation, premeditation, malice aforethought, and intent to kill. The indictment contains two counts. The first one charges that the defendant, at the time and place stated, "in and upon the body of one Nellie Coons, then and there being, willfully and feloniously, deliberately, premeditatedly, and of his malice aforethought, did commit an assault with deadly weapons, being a deadly weapon, the particular description of which is to the grand jury unknown, and a pistol then and there held in the hands of the said James O. Dooley, and loaded with powder and bullet, and then and there the said James O. Dooley did, with the specific intent to kill and murder the said Nellie Coons, willfully, feloniously, deliberately, premeditatedly, and of his malice aforethought, strike and beat the said

3. ——: indictment: sufficiency.

Nellie Coons, upon her, the said Nellie Coons', head
and body, with the said unknown weapon, and did
shoot off and discharge the contents of the said pistol
at, against, into, and through the head and body of
the said Nellie Coons, thereby, willfully, feloniously,
deliberately, premeditatedly, and of his malice afore-
thought, inflicting upon the head and body of the said
Nellie Coons a mortal wound, of which said mortal
wound the said Nellie Coons then and there did die.''
The second count charges the offense in the same
language, with the addition that it was committed ''by
lying in wait.'' We think the indictment not only
sufficiently, but very clearly, charges that both wounds
were inflicted willfully, feloniously, deliberately, and
with premeditation. No other interpretation can be
given to all the language used in either count, when
considered together.

IV. The appellant claims that the court, in its
charge, erroneously referred the jury to the indictment
for information in regard to the offense
charged. In some paragraphs of the
charge the court referred to the indict-
ment, as by stating that before the defendant could be
convicted of the crime charged in the indictment the
state must prove specified facts beyond a reasonable
doubt, but the jury were not told to examine the
indictment. On the contrary, they were told, in the
language of the court, what it charged. The charge is
not vulnerable to the objections made.

4. ——: instruc-
tions to jury:
construction.

V. The appellant complains that the court refused
to instruct the jury in regard to the law of pardons
applicable to persons convicted of murder
in the first degree. We think the action
of the court in that respect was correct.
The guilt of the defendant did not depend upon the
means provided by law for escaping punishment, nor
do we think that was a matter to be considered by the

5. ——: ——:
law as to
pardons.

jury in designating the punishment. That should be determined from the crime proven, and the circumstances of aggravation, the apparent necessity for an example to deter other wrongdoers, and considerations of that nature, and not from the difficulty of obtaining a pardon.

VI. Counsel for appellant have discussed at considerable length many questions founded upon the record, which we do not deem it best to notice specifically. They are, in the main, in the nature of verbal criticisms of the charge, and do not reach to the merits of the case. Of the objections thus presented, it is only necessary to say that they are not well grounded, or, at most, relate to technical errors, which do not affect any substantial rights, and which we are required to disregard. Code, section 4538.

There can be no reasonable doubt that defendant is guilty of the crime of which he was convicted. He commenced to work for his uncle in September, 1891, and worked for him continuously until the time of the murder, excepting some time during the winter, when he attended the Prescott school. In the morning of May 11, after his uncle left home, his aunt scolded him for permitting the cattle to get into a neighbor's field, which made him angry. At about 10 o'clock he went to Prescott, and, while there, wrote an order on a merchant of the town, to which he signed a name intended to be that of his uncle, and with it went to a hardware store, where he inquired for revolvers. He was shown one which he agreed to take, if the merchant would accept the order. The order was accepted, and the defendant carried away with him the revolver and a box of cartridges. He states that he purchased the revolver to practice with, and at the time had no intention of shooting anyone; that he had half a pint of whisky with him, which he and another person

6. ——: sufficiency of evidence to support verdict.

drank, and that he went home about noon; that his aunt was usually kind to him, and that he had not felt any improper desires towards her or his cousin, but when he reached home the cattle were in a neighbor's field. Mrs. Coons scolded him at the dinner table for neglecting the cattle, and they quarreled for some minutes. After dinner, about half past 12 o'clock, she again began scolding him. He had in his pocket a padlock, which he had picked up in the yard for the purpose of unlocking it, but when Mrs. Coons scolded him he became angry, and struck her on the head twice with it. The blows knocked her down. They struggled for a time, and he then shot her. The little girl came running in from the barn, and as she came through the door he struck her on the head with the padlock, and knocked her down; then shot her in the forehead. He placed the bodies on the bed, took a sachel, with clothing, locked the house, harnessed the team to a buggy, and drove away. He further says that he did not recover from his passion sufficiently to realize the enormity of what he had done until he had driven four or five miles. The so-called "confession" was prepared for publication in a newspaper by one of its reporters, and, on the objection of the defendant, it was excluded when offered in evidence; but the objections were withdrawn, and the confession was read. It contains some statements which are shown to be false. One is that he fired seven or more shots into the body of his aunt. A pool of blood outside of the house indicates that one of the persons murdered fell there. The inaccurate statements in the confession are so numerous that it is uncertain how much of it is true. The jury were authorized to give it such credit as it seemed to deserve, rejecting some portions, and accepting others, as they seemed warranted in doing. But we think they were justified in finding, from the confession and other evidence in the case,

that the facts were substantially as we have stated them. The defendant admitted in open court that he was guilty of the unlawful killing of Nellie Coons.

It is said that there is no evidence that it was done by lying in wait. But we think the jury may have found, from the circumstances connected with the killing of the mother, the fact that the child was at the barn when her mother was killed, the evident desire of the defendant to effect at least a temporary concealment of the crime, and the further fact that the child was killed at the house, that the murder of the latter was accomplished by means of lying in wait, within the meaning of the law.

VII. Counsel for appellant discuss at some length the character of the defendant, as shown by his history. His father died when he was but a few years old. His mother remarried, and he left home when he was about thirteen years of age, and worked at different places until he commenced working for his uncle. He seems to have been a quiet, well behaved boy, who was favorably regarded by those who knew him. He attended school in Prescott a portion of the winter preceding the murder, and during that winter joined a church, and attended Sunday school. He was not an apt pupil, and his mental development, from lack of opportunity or of natural ability, seemed to be a little inferior to the average development of boys of his age. He is described as having the appearance of an easy going, sluggish fellow, who did not have the perseverance boys of his age and opportunities usually have. He had not drank much intoxicating liquor, but was quite a reader of cheap, sensational novels. After committing the murders, he drove out of town, and stopped for the night only about seven miles away. The next day he drove to Villisca, twenty-five miles from Prescott, placed the team he drove in a

7. ——: punishment fixed by verdict: change on appeal.

stable, and that evening went to the home of a nephew of Mrs. Coons, and was given a bed for the night. He was there when a dispatch was received by that nephew, notifying him of the death of his aunt and cousin, and a short time afterward was arrested. There is nothing in the record, excepting the commission of the crimes which were proven, to show that defendant is of a depraved nature. Certainly, he can not be regarded as a hardened criminal, although guilty of a crime having few parallels in wanton atrocity in the history of the state. In view of the youth of the defendant, his lack of mental development, and his almost uniformly good conduct before the crime was committed, we should have been better satisfied had the jury designated imprisonment in the penitentiary for life as his punishment; but, in a legal sense, the evidence was sufficient to authorize the punishment designated, and there is no sufficient ground upon which we can prevent it.

We find no error in the record prejudicial to the defendant, and the judgment of the district court is AFFIRMED.