**STATE of Iowa, Appellee,**

v.

**Gary Lynn FRAZER, Appellant.**

**No. 60247.**

Supreme Court of Iowa.

June 28, 1978.

Walter W. Rothschild, Waterloo, and Leona Durham, Iowa City, for appellant.

Richard C. Turner, Atty. Gen., and Lona J. Hansen, Asst. Atty. Gen., for appellee.

Considered by MOORE, C. J., and RAWLINGS, LeGRAND, HARRIS and McCORMICK, JJ.

HARRIS, Justice.

We affirm defendant's first-degree murder conviction. There are three assignments of error. Defendant complains of the admission, over his objection it was hearsay, of testimony reciting the victim's statements to witnesses. Defendant asserts there was prosecutorial misconduct. And he contends there was insufficient evidence to show deliberation and premeditation. We believe all three contentions are without merit.

During the evening of December 2, 1975 Gary Lynn Frazer (defendant) and his brother, Michael, were drinking in two Oelwein bars. Sheila Foley, the victim, and her girlfriends were in one of the bars. Sheila became tired and went out to rest in the automobile of Patricia Goodin, one of her companions that evening. Sheila soon returned and told them defendant was in Patricia's car. Patricia told Sheila defendant was a "creep" and she did not want him in her car. Sheila gave the car keys back to Patricia, left the bar, and was not again seen by them alive.

After Sheila left, Patricia went to the window to make sure defendant left her car. While she watched, defendant got out of the car and went down the street, after which Patricia went out to lock her car. Sheila was not in the car when Patricia went out to lock it.

At midnight Rose Kisner and Carl Dugan were walking down an Oelwein street and

observed defendant sitting in a car with a girl who had shoulder-length, reddish hair and who was wearing a coat with a white fur collar. Sheila had shoulder-length, reddish hair and was wearing such a coat when she left home that evening.

At about 1:30 a. m. Greg Alessio came out of the bar. He observed defendant and a woman drive by in defendant's car.

When Sheila did not come home she was reported missing but was not found until December 10, 1975 when her nude body was found on a gravel road. As the result of an autopsy it was concluded Sheila had probably been run over by a car. Sand taken from her body matched the sand of the gravel road. From the autopsy it was also determined Sheila had died eight and one half to ten days before the autopsy and probably had sexual intercourse within 24 to 48 hours prior to death.

Agents of the bureau of criminal investigation (BCI) examined defendant's car and found what analysis showed to be human tissue and blood on the underside. The agents vacuumed the car and found head hair which was consistent with Sheila's.

Two boys found a pair of shoes near Lake Oelwein which her mother identified as Sheila's. BCI agents found a distinctive black nylon fiber attached to the left shoe at the edge of the sole. This was similar to nylon fibers from the floor mats in defendant's car.

The jury indicated by a guilty verdict it did not accept defendant's attempted alibi.

I. Defendant first asserts the trial court erred in admitting testimony of witnesses which recited statements made by the victim. Defendant objected on the ground of hearsay. The witnesses were Debbie Duckett and Patricia Goodin who had accompanied Sheila to the bar. Debbie Duckett's testimony included the following:

"Q. * * * While you and Patty [Goodin] were playing pool, did you have any communication with Sheila at all, do you recall? A. Yes.

"Q. And what did that concern?

"MR. PATTEE [defendant's counsel]: Object to that as calling for a hearsay answer.

"THE COURT: Overruled. Go ahead.

"A. She said she was going to go out to the car for awhile. She wanted Patty's keys because her car was locked.

" * * *

"Q. And after she entered [the tavern], what, if anything, happened? A. She—We were standing by the corner of the bar and she came up and said that Gary Frazer wanted her to give him a ride home.

"MR. PATTEE: Excuse me. I want to interpose an objection, and ask the objection be allowed to precede the answer, as I couldn't anticipate the witness would testify as to conversations with Sheila Foley. At this time I would object to the question and the answer as it calls for hearsay.

"THE COURT: Overruled. * * *."

During the testimony of Patricia Goodin she testified in part as follows:

"Q. Was there any conversation at all about Sheila going outside that you recall?

"MR. PATTEE: Objection, Your Honor. It calls for hearsay evidence.

"THE COURT: Overruled. Go ahead.

"A. After we sat there for awhile, she said that she wanted to go out in the car and lay down, she was tired, and we asked her if she wanted to go home, and she said she didn't want to go home yet.

" * * *

"Q. * * *. And did Sheila Foley relate anything to you at all? A. She—

"MR. PATTEE: Object, Your Honor. It calls for hearsay.

"THE COURT: Overruled. Go ahead.

"A. She said that Gary Frazer was out in my car and he wanted her to give him a ride home.

"Q. Did she specifically say "Gary Frazer"? A. Yes.

"Q. No question in your mind about that? A. No.

"Q. And what did you say to her? A. I told her, no, that he was a creep and I didn't want him in my car."

The State argues (1) this testimony comes under the res gestae exception to the hearsay rule, (2) the testimony was not prejudicial because another witness testified about a closely similar conversation between defendant and Sheila, and (3) error was not preserved. We need not reach any of the State's contentions because we think the testimony here was not hearsay. We explained the admissibility and purpose of such evidence in *State v. Nowlin*, 244 N.W.2d 596, 599–600 (Iowa 1976) and *State v. Leonard*, 243 N.W.2d 887, 890 (Iowa 1976).

■ It is only part of the definition of hearsay to say it is a statement, other than one made by a declarant while testifying at trial or hearing. In order to constitute hearsay such a statement must also be offered in evidence to prove the truth of the matter asserted therein. The challenged statements were not offered to prove defendant was a "creep." They were not offered to show the victim was going out to the car for awhile or that the victim wanted her friend's car keys because the car was locked. Nor were they offered only to show defendant wanted a ride home. Rather the challenged statements were offered and were admissible for the very purpose defendant complains of them. Under *Nowlin* and *Leonard* and the authorities therein cited the evidence was a part of the circumstantial case of the State which showed a connection that night between defendant and the victim. It was not offered to prove the truth of anything the victim was quoted as saying. It was not hearsay.

Defendant's contention to the contrary is without merit.

II. Defendant next complains he was unconstitutionally denied a fair trial by reason of prosecutorial misconduct and should have been granted a new trial. Under this assignment defendant makes three main assertions. It is claimed (1) the prosecutor persistently asked leading questions, (2) the prosecutor interjected prejudicial issues

which he could not prove, and (3) the prosecutor in closing argument created evidence and invited speculation and conjecture.

The controlling question is whether the trial court abused its discretion in denying defendant's motion for a new trial. The question before the trial court was whether defendant showed prejudice by reason of the leading questions. *State v. Leonard*, supra, 243 N.W.2d at 891.

■ Our review of the transcript discloses occasions when the prosecutor asked various witnesses leading questions. However when objection on that basis was interposed the prosecutor generally rephrased his question in an attempt not to lead the witnesses. We cannot find, on the basis of this record, the trial court abused its discretion in finding no prejudice was shown.

Defendant also assails the conduct of the prosecutor in redirect examination of Dr. Weland, who performed the autopsy on Sheila. The following occurred:

"Q. Now, Doctor, on cross examination—I think possibly on direct, you mentioned that there was no tear in the vaginal opening; is that correct? A. Yes, that's right.

"Q. Does that necessarily mean that Sheila Foley did not have forcible sexual intercourse?

"MR. PATTEE: I would have to object to that, Your Honor. There has been no foundation, and it's speculation.

"THE COURT: Overruled. Go ahead.

"A. I could not say she was forced into it. Since there are no injuries or lacerations at the opening, I cannot say whether it was with her consent or without her consent.

"Q. Doctor, in regard to this, are you stating that it is possible it could have been forced or it could have been consent? A. It could have been either way, yes.

"Q. You just don't know? A. I don't know. I don't have any way of determining."

Defendant argues there could no reason for the prosecutor to engage in this line of questioning other than to prejudice the jury toward defendant and encourage the jury to engage in conjecture and speculation as to a rape the State could not prove. Defendant cites various authorities including, in oral argument, *State v. Monroe,* 236 N.W.2d 24, 27–29 (Iowa 1975). However we do not believe *Monroe* or the other authorities defendant cites support his position. The scope and extent of cross-examination, even of an accused, are largely within the discretion of the trial court. *State v. Everett,* 214 N.W.2d 214, 219 (Iowa 1974).

Quoting from early authorities we reviewed admissibility of evidence as to the nature and extent of injuries inflicted, and conditions of a body, in a murder case in *State v. Nowlin,* 244 N.W.2d 591, 593 (Iowa 1976):

" 'As a general rule, the * * * circumstances and facts attending the homicide may be shown on the question of malice, premeditation, or deliberation. (Authority). The fierceness and atrocity of the attack, the circumstances under which it was made, the nature and extent of the injury inflicted, the condition of the body and wearing apparel, the deadly nature of the weapon used, and the manner of using it, are proper subjects of inquiry. * * *.' * * *." See also *State v. Dooley,* 89 Iowa 584, 588–589, 57 N.W. 414, 415–416 (1894).

It could be argued defendant was in no way harmed by the testimony complained of. The witnesses' earlier remarks that seminal fluid was found in the victim could lead to a suspicion of rape. The challenged testimony concerning the condition of the body and to the effect intercourse could have been with or without consent might well have neutralized any indication of rape. There was no prejudicial error in admission of the testimony.

Defendant complains on appeal of the prosecutor's final argument. We are limited to the objection made at the time of the trial which challenged certain speculations made by the prosecutor. As we understand defendant's complaint it focuses on a remark by the prosecutor which pointed to testimony of a crude statement attributed to defendant which related to his motive on the night in question. The prosecutor added, "And you people heard this many times." Defendant argues the prosecutor thereby reiterated the poison statement.

We have no way of knowing whether the prosecutor intended to convey to the jury that they had heard the statement many times out of court, in argument, or in testimony. The quoted statement appears only one time during testimony. Like all other claims of prosecutorial misconduct, however, this is a matter we leave largely in the discretion of the trial court. *State v. Webb,* 244 N.W.2d 332, 333 (Iowa 1976). Under *Webb* and the authorities it cites prejudice results from persistent efforts to interject prejudicial matter before the jury. Although prejudice may result from isolated prosecutorial misconduct, we find no such prejudice here. And we find no persistent efforts defendant can complain of.

Defendant's second assignment is without merit.

III. For his final assignment of error defendant contends the State failed to prove the elements of deliberation and premeditation. We reviewed the characteristics of these elements in *State v. Fryer,* 226 N.W.2d 36, 41 (Iowa 1975) as follows:

"To deliberate is to weigh in one's mind or to consider. To premeditate is to think or ponder upon a matter before action. Webster's International Dictionary. Premeditation and deliberation may not be presumed. It may not be inferred from intent. (Authority). However premeditation and deliberation need not exist for any particular length of time. (Authority). In finding premeditation and deliberation the trier of facts may consider the fact a defendant has selected a deadly weapon, such as the gun involved here, with an opportunity to deliberate where he thereafter uses it in a deadly manner. (Authority)."

Under this test we believe a jury question was made out on the questions of premeditation and deliberation. From the evidence the jury could find defendant's automobile was a deadly weapon as used in this crime. *State v. Bizzett,* 212 N.W.2d 466, 470 (Iowa 1973). The use of a deadly weapon accompanied by an opportunity to deliberate, even for a short time, is evidence of malice, deliberation, and premeditation. *State v. Smith,* 240 N.W.2d 693, 695 (Iowa 1976); *State v. Lass,* 228 N.W.2d 758, 766 (Iowa 1975).

Dr. Weland testified Sheila's injuries caused almost immediate death and resulted from a car running over her body. He testified she was not hit by the car while she was standing or running down the road but was run over as she was lying naked and prone on the ground. Her injuries were extensive. Her lungs and liver were crushed and split, she had a broken arm, broken collar bone, broken ribs, a cracked pelvis, and chipped hip bone. She had several wounds on her face and body. A jury question was presented. *State v. Limerick,* 169 N.W.2d 538, 540 (Iowa 1969).

As all of defendant's contentions are without merit the judgment of the trial court is affirmed.

AFFIRMED.