**IN THE COURT OF APPEALS OF IOWA**

No. 15-1392
Filed November 9, 2016

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**BRIAN JAMES MAXWELL,**
      Defendant-Appellant.

_____

Appeal from the Iowa District Court for Madison County, Gary G. Kimes, Judge.

A defendant appeals his conviction for lascivious conduct with a minor, alleging ineffective assistance of counsel. **AFFIRMED.**

Brandon Brown of Parrish, Kruidenier, Dunn, Boles, Gribble, Gentry, Brown & Bergmann L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Heard by Vogel, P.J., and Tabor and Mullins, JJ.

**VOGEL, Presiding Judge.**

Brian Maxwell appeals following a bench trial where he was convicted of lascivious conduct with a minor, in violation of Iowa Code section 709.14 (2013). He claims he received ineffective assistance of trial counsel when counsel failed to object to (1) improper leading questions posed by the prosecutor, (2) evidence of prior bad acts, (3) testimony from a rebuttal witness he claims was irrelevant, (4) testimony that improperly vouched for the credibility of the complaining witness, and (5) prosecutorial misconduct. Individually and cumulatively, Maxwell claims he was prejudiced by counsel's actions. He also claims the district court abused its discretion when it imposed a firearms ban as part of the appeal bond.

For the reasons stated herein, we affirm Maxwell's conviction, preserving his claim challenging counsel's effectiveness for failing to object to what he considers to be improper vouching testimony. We also conclude the district court did not abuse its discretion in imposing a firearms ban as part of the appeal bond.

## I. Background Facts and Proceedings.

Maxwell was hired March 1, 2014, to serve as a youth coordinator for two churches in the Winterset area. During his introduction to the youth group, Maxwell met the complaining witness, then age sixteen, and he and his wife decided to mentor her after she approached them with some of her personal struggles. They included her on family outings and purchased clothes for her. They paid to have her hair cut and highlighted and gave her a cell phone so she could stay in contact with them and with her father.

The complaining witness testified Maxwell assaulted her on March 17 in the downstairs youth room at one of the churches by undoing her bra and having her lift up her shirt. She asserted Maxwell then touched, kissed, and licked her breasts, and rubbed her between her legs over her clothing, while Maxwell's two sons, aged eight and nine, were in another corner of the room, playing video games with their backs to Maxwell and the witness.

A week after the incident, the complaining witness broke down at home and disclosed the events of March 17 to her father and other members of her family. The police were called, and the complaining witness underwent a forensic interview with Mikki Hamdorf at the Blank Children's Hospital Regional Child Protection Center. After the interview and the investigation were completed, charges were filed against Maxwell that proceeded to trial to the court on April 21, 2015. After hearing testimony from the victim and her family, the investigating officer, the pastor and other staff and members of the church, another member of the youth group, and Maxwell's wife and his two sons, the court issued its verdict finding Maxwell guilty as charged. The court stated in its ruling that it found "the State's witnesses to be credible and the Defendant's witnesses to not be credible." The court denied Maxwell's posttrial motion to expand the court's findings of fact and conclusions of law and his motion in arrest of judgment. The court sentenced Maxwell to one-year in jail with all but 120 days suspended, placed Maxwell on probation for two years, and imposed a ten-year special sentence under Iowa Code section 903B.2. In addition, the court imposed a $2000 appeal bond and ordered him "not to possess firearms while this matter is on appeal."

Maxwell appeals.

## II. Scope and Standard of Review.

Because claims of ineffective assistance of counsel are based in the Sixth Amendment, our review is de novo. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). Such claims are normally preserved for postconviction-relief proceedings, where a record of counsel's conduct can be more fully developed, but we will resolve such claims on direct appeal where the record is adequate. *Id.* Upon our review of the record and the arguments made by the parties, we conclude some of Maxwell's claims can be resolved on direct appeal, while others must be preserved for further proceedings on postconviction relief.

## III. Ineffective Assistance of Counsel.

To prove his claims of ineffective assistance of counsel, Maxwell must prove by a preponderance of the evidence that counsel failed to perform an essential duty and he suffered prejudice as a result. *See State v. Morgan*, 877 N.W.2d 133, 136 (Iowa Ct. App. 2016). The claims fail if either prong is not proved. *Id.*

**A. Leading Questions.** Maxwell claims counsel was ineffective for failing to object to the State's "rampant and prejudicial" use of leading questions. He asserts the prosecutor effectively put the answers he wanted in the mouths of the witnesses, which resulted in evidence being admitted that witnesses would not have otherwise recalled. He cites pages of trial transcript containing the testimony of the investigating officer, the complaining witness's father and her cousin, the complaining witness, and Hamdorf.

"Where the question assumes any fact which is in controversy, so the answer may really or apparently admit that fact, it is leading." *Giltner v. Stark*, 219 N.W.2d 700, 713 (Iowa 1974). While leading questions should not be used on direct examination of a witness, there is an exception where such questions are "necessary to develop that witness's testimony." Iowa R. Evid. 5.611(c). "[L]eading questions may be proper and necessary where the witness is of tender age, as well as where the witness is testifying as to some form of sexual abuse." *State v. Mueller*, 344 N.W.2d 262, 266–67 (Iowa Ct. App. 1983) (internal citations omitted). With respect to the many examples of leading questions posed to the complaining witness, we conclude counsel did not breach an essential duty in failing to object because the objection would have likely been overruled in light of the victim's age and the subject matter of her testimony. *See State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011) ("We will not find counsel incompetent for failing to pursue a meritless issue.").

The complained of questions to the investigating officer occurred on the State's redirect examination of the witness after defense counsel's cross-examination. The State used the form of the question to move the witness to the various topics the State wished to address in response to the cross-examination. "A question is objectionable as leading, when it suggests the answer to it, and not when it merely directs the attention of the witness to the immediate subject with reference to which he is interrogated." *Pelamourges v. Clark*, 9 Iowa 1, 18 (1859). We find no breach of an essential duty by defense counsel for not objecting to these leading questions.

The questions Maxwell complains of on appeal that were posed to the complaining witness's father and cousin were in response to defense counsel's hearsay objections when the witnesses attempted to testify to what the complaining witness had told them on the night she disclosed the abuse. In order to prevent the witnesses from venturing into hearsay statements, the State posed closed, leading questions. When defense counsel did lodge objections to these leading questions, the objections were overruled. "[C]ounsel need not make every possible evidentiary objection to satisfy the standard of normal competency." *State v. Pierson*, 554 N.W.2d 555, 563 (Iowa Ct. App. 1996). We again conclude counsel did not breach an essential duty by not objecting to these questions. Any such objections would have likely have been overruled or resulted in the State rephrasing the question posed. *See State v. Frazer*, 267 N.W.2d 34, 37 (Iowa 1978) (finding the defendant suffered no prejudice when the prosecutor rephrased leading questions after an objection by defense counsel).

Finally, the questions posed to Hamdorf that Maxwell contends are leading were, in most cases, rephrasing of information Hamdorf had already discussed in a prior answer. Hamdorf described one of the reasons for why a victim may delay disclosure of abuse was that the victim viewed the relationship with the perpetrator as a positive one and disclosing the abuse meant the positive aspect of the relationship goes away. The prosecutor then asked, "They might believe that the attention or gifts that they were receiving would go away if they told," to which Hamdorf responded, "Correct." Again, assuming the questions posed to Hamdorf were leading, we conclude counsel did not breach an essential duty in failing to object as such objections would have likely been

overruled or the prosecutor would have had the opportunity to rephrase the question.

**B. Prior Bad Acts.** Maxwell continues his claims of ineffective assistance of counsel by asserting counsel should have objected to evidence of interactions between the complaining witness and himself that he believed amounted to prior bad acts. There was evidence introduced that in the days leading up to the March 17 incident Maxwell applied and removed Band-Aids to the complaining witness's breasts in order to prevent her nipples from showing through the top Maxwell had purchased for her, Maxwell gave the complaining witness a massage when the two were alone in a hotel room the family had rented to go swimming, Maxwell kissed the complaining witness in his vehicle as Maxwell was giving her a ride home from a youth event, and during that ride home, Maxwell discussed inappropriate topics, such as consuming alcohol, getting a tattoo, and piercing his penis, with the complaining witness and another young female from the youth group. Maxwell acknowledges that in a prosecution for sexual abuse, evidence of another sexual abuse is admissible under Iowa Code section 701.11;[1] however, he asserts none of these acts amount to sexual abuse as defined in chapter 709. *See* Iowa Code § 701.11(3) (defining "sexual

---

[1] This code section states, in part:

> In a criminal prosecution in which a defendant has been charged with sexual abuse, evidence of the defendant's commission of another sexual abuse is admissible and may be considered for its bearing on any matter for which the evidence is relevant. This evidence, though relevant, may be excluded if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. This evidence is not admissible unless the state presents clear proof of the commission of the prior act of sexual abuse.

Iowa Code § 701.11(1).

abuse" in this section to include "any commission of or conviction for a crime defined in chapter 709"). Because these actions did not amount to sexual abuse, Maxwell claims counsel should have objected and the evidence should have been excluded as its only purpose was to show he was a bad person.

The State responds that such evidence was permissible under section 701.11. Even if the evidence fell short of actual sexual abuse as defined in chapter 709, the State maintains the evidence was admissible as relevant to Maxwell's intent and relevant to show "the nature of the relationship between the alleged perpetrator and the victim." *See State v. Reyes*, 744 N.W.2d 95, 102 (Iowa 2008). The State maintains the evidence was relevant to show Maxwell, in the days leading up to March 17, was deliberately eroding boundaries and escalating the intensity of this physical contact with the complaining witness for sexual gratification as required for a conviction for lascivious conduct with a minor under section 709.14.

We assume, without deciding, that this testimony did not amount to acts that would be considered a crime defined in chapter 709. *See* Iowa Code § 701.11(3). Without that prerequisite, section 701.11(1) cannot be used as a justification for the admission of the prior acts evidence. However, under Iowa Rule of Evidence 5.404(b), other crimes, wrongs, or acts are admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Maxwell's intent, in having the complaining witness lift up her shirt and bra, was at issue. The State had to prove this was done "for the purpose of arousing or satisfying the sexual desires of either of them." *See* Iowa Code § 709.14. Evidence Maxwell had touched the complaining witness's

breasts, massaged her chest, discussed inappropriate sexual topics, and kissed her in the four days leading up to the alleged incident speaks to Maxwell's intent to arouse his and/or the complaining witness's sexual desires. Any objection to this evidence as irrelevant at trial would have been overruled, and therefore, counsel was not ineffective in failing to make that objection. *See State v. Swinney*, 345 P.3d 509, 514 (Or. Ct. App. 2015) (noting the expert testimony on grooming concerning how offenders often choose vulnerable child was relevant to understand the defendant's plan and preparation).

**C. Rebuttal Testimony.** Maxwell also claims his counsel provided ineffective assistance when counsel failed to object to the State's rebuttal witness based on relevancy. The witness in question was a sale's associate at a local clothing store where Maxwell, accompanied by the complaining witness, purchased items of clothing for the complaining witness to wear. The worker testified she knew the complaining witness's father and also knew Maxwell and his family. She stated she thought it was "a little strange" that Maxwell arrived with the complaining witness close to closing time to choose clothes for the complaining witness when she had seen Maxwell's wife shopping in the store earlier that day. Based on her concerns, she asked the complaining witness if she was okay, and the complaining witness replied she was fine.

Defense counsel did object to the witness's testimony, asserting the proposed questioning was improper rebuttal evidence. The court denied this objection, permitting the rebuttal witness to testify. But Maxwell claims counsel was deficient in failing to further object that the testimony the rebuttal witness offered was irrelevant and more prejudicial than probative. Because all

witnesses with knowledge admitted Maxwell shopped at the store with the complaining witness at the time and date in question, Maxwell asserts this testimony was not relevant and was only offered to make the shopping trip appear unfairly and prejudicially illicit.

The State asserts the testimony offered, specifically Maxwell's wife's presence in the store earlier the same day, was relevant to show there had been no need for Maxwell to have brought the complaining witness to the store that evening to purchase a spaghetti-strap top. In addition, the State asserts that even if counsel should have objected, any testimony that came into evidence, specifically on cross-examination, ended up being helpful to the defense as the rebuttal witness admitted that she did not see anything inappropriate between Maxwell and the complaining witness, and when they left the store, the complaining witness seemed happy.

"Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *State v. Putman*, 848 N.W.2d 1, 9 (Iowa 2014) (quoting Iowa R. Evid. 5.401). Evidence that is relevant is admissible so long as the danger of unfair prejudice does not substantially outweigh the evidence's probative value. Iowa R. Evid. 5.403. We conclude this evidence did have some minor relevance, particularly with respect to the need for Maxwell, as opposed to his wife, to shop for clothing with the complaining witness that night. In addition, we find no prejudice to Maxwell as a result of the admission of the evidence, particularly in light of the effective cross-examination

by defense counsel. Therefore, we find Maxwell did not prove counsel was ineffective in not objecting to this testimony on relevancy grounds.

**D. Vouching Testimony: Grooming.** Next, we address Maxwell's claim that counsel should have objected to testimony from the investigating officer and from the forensic interviewer, Hamdorf, regarding the process known as grooming. Hamdorf described grooming as "the process of essentially sexualizing the relationship between the offender and the child" with the goal of gaining access to the child and minimizing the disclosure of the abuse. Maxwell maintains the testimony about grooming was improper because demonstrating that grooming occurred in this case leads to the conclusion that the complaining witness was credible in her claim the relationship was sexualized. Maxwell also complains that many of the hypothetical questions posed to Hamdorf about grooming mirrored the complaining witness's testimony rather than being just a general list of behavioral symptoms. Maxwell claims the expert improperly used statistics about grooming to bolster the complaining witness's credibility. Finally, he claims Hamdorf lapsed into specifics about the case from hypotheticals posed by the prosecutor by replacing the indefinite article "an" before "alleged victim" with the definite article "the," creating the term, "the alleged victim."

In a trio of cases, our supreme court discussed what constitutes improper expert vouching for child victims in sexual abuse cases tried to a jury. *See State v. Dudley*, 856 N.W.2d 668 (Iowa 2014); *State v. Brown*, 856 N.W.2d 685 (Iowa 2014); *State v. Jaquez*, 856 N.W.2d 663 (Iowa 2014). The court in each of those cases stated:

Although we are committed to the liberal view on the admission of psychological evidence, we continue to hold expert testimony is not admissible merely to bolster credibility. Our system of justice vests the jury with the function of evaluating a witness's credibility. The reason for not allowing this testimony is that a witness's credibility "is not a 'fact in issue' subject to expert opinion." Such opinions not only replace the jury's function in determining credibility, but the jury can employ this type of testimony as a direct comment on defendant's guilt or innocence. Moreover, when an expert comments, directly or indirectly, on a witness's credibility, the expert is giving his or her scientific certainty stamp of approval on the testimony even though an expert cannot accurately opine when a witness is telling the truth. In our system of justice, it is the jury's function to determine the credibility of a witness. An abuse of discretion occurs when a court allows such testimony.

*Dudley*, 856 N.W.2d at 676–77 (citations omitted); *Brown*, 856 N.W.2d at 689 (quoting *Dudley*, 856 N.W.2d at 676–77); *Jaquez*, 856 N.W.2d at 665 (quoting *Dudley*, 856 N.W.2d at 676–77). While expert testimony that comments, either directly or indirectly, on a witness's credibility is improper, "there is a very thin line between testimony that assists the jury in reaching its verdict and testimony that conveys to the jury that the child's out-of-court statements and testimony are credible." *Dudley*, 856 N.W.2d at 677.

Maxwell claims the investigating officer should not have been able to offer the opinion, based on his experience and training, that grooming occurred in this case. The officer testified the facts that led him to this conclusion included Maxwell's actions in gaining the complaining witness's trust and the trust of her father, giving the complaining witness a ride home, asking her to be part of his family, spending time with her, giving her a cell phone, buying her clothes, getting her hair and nails done, having her ears pierced, and taking her to movies and restaurants.

As for Hamdorf, Maxwell claims she should not have been able to offer testimony that generally described grooming behavior and it was improper for the prosecutor to go on to ask questions that aligned the complaining witness's version of Maxwell's conduct with typical grooming behavior. Hamdorf agreed gifts are often given to female victims as part of grooming and include such things as clothing, access to a cell phone, and going out to eat or to a movie. Hamdorf went on to explain that the goal of grooming is to sexualize the relationship to the point a boundary line has been crossed. Therefore, a person may not understand the behavior to be grooming, as opposed to innocent conduct meant to simply be nice, until an inappropriate act occurs. In addition, Hamdorf testified grooming can minimize disclosure of the inappropriate behavior because the victim would be fearful of what would occur when disclosure occurs—the feeling of not being believed or being blamed for the conduct, the feeling of shame or embarrassment over what happened, the fear of the loss of the attention or gifts received if the conduct is revealed, the worry about what will happen to the offender, or the fear the offender may follow through on threats or bribes that were made to keep the victim from reporting.

Unlike the officer's testimony, Hamdorf kept her description of grooming to more general actions, though she did agree some specific actions amounted to grooming and those actions mirror actions taken by Maxwell. Testimony has been permitted to describe general or typical symptoms associated with being traumatized. *See State v. Gettier*, 438 N.W.2d 1, 6 (Iowa 1989). And testimony has been allowed that explains why child victims may delay in reporting their sexual abuse. *See State v. Payton*, 481 N.W.2d 325, 327 (Iowa 1992). It was

not until defense counsel's cross-examination that Hamdorf testified she believed grooming occurred in this case based only on the information she had from the complaining witness in the forensic interview. Hamdorf made clear during that line of questioning that *if* what the complaining witness told Hamdorf was true, then Hamdorf's opinion was that grooming occurred. Maxwell does not assert on appeal that defense counsel was ineffective in pursuing this line of questioning with Hamdorf.

Maxwell also complains that Hamdorf testified "the majority of time there is some type of grooming that occurs before an abusive act" and "more often than not if grooming has occurred, disclosure would be delayed." Hamdorf testified research in one study showed "roughly seventy-five percent of the adults didn't disclose until they were into adulthood about the abuse that occurred when they were a child." Maxwell claims this testimony is improper as it attempted to provide statistics to bolster the complaining witness's testimony. *See State v. Tracy*, 482 N.W.2d 675, 678 (Iowa 1992) (finding testimony improper that no more than two or three children per thousand who come forth with serious allegation are later found to be dishonest); *State v. Myers*, 382 N.W.2d 91, 97–98 (Iowa 1986) (finding expert testimony relaying statistics regarding the truthfulness of child sexual abuse victims was improper).

Finally, Maxwell complains the prosecutor often replaced the indefinite article "a" with the definite article "the" when asking Hamdorf hypothetical questions. This linguistics change is not trivial, according to Maxwell, because he believes it reveals the fact Hamdorf knew the hypothetical was about the

complaining witness and it resulted in Hamdorf vouching for the complaining witness's credibility.

Maxwell claims all of the activity that Hamdorf and the investigator officer testified was grooming behavior was completely innocent behavior. It was therefore improper to include their testimony that this behavior was similar to the behavior sexual abusers engage in, which then fostered the inferential leap that Maxwell is a child sex abuser. In support of his claim, Maxwell cites a case from Oregon, *State v. Hansen*, 743 P.2d 157, 160–61 (Or. 1987), *superseded by statute as recognized in Powers v. Cheeley*, 771 P.2d 622, 628 n.13 (Or. 1989), where the Oregon Supreme Court ruled the detective's testimony about was improperly admitted for the purpose of trying to explain the complaining witness's delayed disclosure of the abuse because the grooming testimony "did nothing to explain the student's initial denial of the sexual relations." The court also concluded the relevance of the grooming testimony was "practically nil" as the detective generally described a profile of a nonviolent child abuser. *Hansen*, 743 P.2d at 161.

We find no specific Iowa case law dealing with the admissibility of expert testimony on grooming behavior but do note the *Hansen* decision was not the definitive Oregon opinion on the admissibility of expert testimony on grooming behavior. In *State v. Stafford*, 972 P.2d 47, 52 (Or. 1998), the Oregon Supreme Court found expert testimony about grooming behavior was relevant and admissible to the issue of the defendant's intent in placing his hands on the victim's thighs, and in *Swinney*, 345 P.3d at 513–14, the Oregon Court of Appeals found grooming testimony relevant to help the jury understand how

familial sex abuse typically presents itself and relevant to understand the defendant's plan to abuse the complaining witness.

Grooming testimony has been considered admissible and proper in many courts. *See* Marjorie A. Shields, Annotation, *Admissibility of Expert Testimony on Grooming Behavior Involving Sexual Conduct with Child*, 13 A.L.R. 7th Art. 9 (2015). Such testimony has been found to be relevant to provide jurors insight as to actions that seem innocent but are instead part of a seduction technique. *United States v. Romero*, 189 F.3d 576, 585 (7th Cir. 1999). Grooming evidence has also been found relevant and admissible when used to help the jury determine the defendant's intent or modus operandi, s*ee United States v. Hitt*, 473 F.3d 146, 158 (5th Cir. 2006), and used to "explain not only how a child molester could accomplish his crimes without violence, but also why a child victim would acquiesce and be reluctant to turn against her abuser." *Jones v. United States*, 990 A.2d 970, 978 (D.C. 2010).

Irrespective of whether counsel would have had a meritorious objection to all or part of the grooming testimony from the investigating officer and Hamdorf, we note our record is devoid of any discussion by defense counsel regarding his investigation, research, or strategy regarding the grooming testimony challenged on appeal. While "expert testimony that either directly or indirectly renders an opinion on the credibility or truthfulness of a witness" is improper, *see Payton* 481 N.W.2d at 327 (citation omitted), defense counsel did not object to this testimony and even invited further discussion about grooming by asking Hamdorf to render an opinion as to whether Maxwell's conduct in this case amounted to grooming. On appeal, Maxwell does not claim this line of inquiry by defense counsel was

improper. "While strategic decisions made after 'thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,' strategic decisions made after a 'less than complete investigation' must be based on reasonable professional judgments which support the particular level of investigation conducted." *Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001) (quoting *Strickland v. Washington*, 466 U.S. 668, 690–91 (1984)).

Because we cannot on this record assess whether counsel had reasonable strategic reasons for not objecting and even developing the grooming testimony at trial, this claim must be preserved for postconviction-relief proceedings where counsel will be given an opportunity to explain his conduct. *State v. Coil*, 264 N.W.2d 293, 296 (Iowa 1978) ("Even a lawyer is entitled to his day in court, especially when his professional reputation is impugned.").

**E.  Prosecutorial Misconduct.**  For his final claim of ineffective assistance of counsel, Maxwell asserts his attorney should have objected to what he claims were multiple instances of prosecutorial misconduct.  He again raises claims that counsel should have objected to the many instances of leading questions.  As that claim was addressed above, there is no need to repeat that analysis here.  He also claims counsel's failure to object to what he claims was improper grooming testimony that vouched for the complaining witness's credibility was prosecutorial misconduct.  As we concluded the record was not adequate to address the ineffective claims regarding grooming, we do not address that part of his claim of prosecutorial misconduct, preserving that issue as well for possible postconviction-relief proceedings.  However, Maxwell also claims counsel was ineffective in failing to object when witnesses were asked to

comment on the veracity of other witnesses and when the investigating officer was asked about the charging decision.

*(1) Comments on Charging Decision.* Maxwell asserts the prosecutor should not have asked the investigating officer about the decision to charge Maxwell with a crime.

> Q. And so based upon your investigation you made the decision to charge the Defendant with lascivious conduct of a minor? A. I consulted with the county attorney at that time, Julie Forsyth, and she advised me that that was the charge to file.

Maxwell asserts this testimony was "an improper comment on the evidence, invaded the province of the factfinder and was directed toward Maxwell's guilt and the credibility of crucial witnesses." We disagree. The fact that a charge was filed accusing Maxwell of lascivious conduct with a minor is a forgone conclusion based on the fact a trial was occurring where Maxwell faced such a charge. The fact that the decision to charge was made based on the investigation of the officer is also apparent based on the fact that trial was occurring. The question did not ask the officer to opine whether he believed or disbelieved certain witnesses he interviewed in the course of his investigation. We conclude counsel did not violate an essential duty in failing to object to this question by the prosecutor.

*(2) Comments on Veracity.* Maxwell highlights two portions of the trial transcript that he claims illustrate the prosecutor improperly asking a witness to comment on the veracity of another witness. During the complaining witness's father's testimony, the prosecutor asked, "Has [the complaining witness] ever lied

to you?" to which the father responded, "No." In addition, during the prosecutor's cross-examination of Maxwell's wife, the following exchange occurred:

> Q. I want to be brief about this. You have heard about the incident that [the complaining witness] has reported in the hotel room on the 14th? Is that correct? A. Yes.
> Q. And it is your testimony here today that she is not being truthful about that? A. Yes.
> Q. You have heard about the incident that [the complaining witness] spoke about in the vehicle on March 16th? Is that correct? A. Was that a Saturday?
> Q. Sunday. A. Yes. I have heard about it. Yes.
> Q. Your testimony today is that [the complaining witness] is making that up? A. Yes.
> Q. You have heard the testimony of [another youth group member], what was discussed in the vehicle on March 16th? A. Yes.
> Q. And it is your testimony that [she] is making that up? A. In a roundabout. Yes.
> Q. And it is your testimony or you have heard about the allegation that occurred on March 17th in the church basement? Is that right? A. Yes.
> Q. Your testimony here today is that you believe [the complaining witness] is making that incident up? A. Yes. Yes.
> Q. Is that right? A. Yes.

"It is well-settled law in Iowa that a bright-line rule prohibits the questioning of a witness on whether another witness is telling the truth. There are no exceptions to this rule." *Bowman v. State*, 710 N.W.2d 200, 204 (Iowa 2006). The State maintains the question posed to the complaining witness's father did not violate the bright-line rule because he was not asked whether the complaining witness lied in her testimony or statements to police but instead was asked about her general character for truthfulness, and the State claims, that

testimony could have been admissible under Iowa Rule of Evidence 5.608(a).[2]

We note for reputation evidence of truthfulness to be admissible in the form of an opinion, the truthful character of a witness has to first be "attacked by opinion or reputation evidence or otherwise." Iowa R. Evid. 5.608(a)(2). The State does not point us to any place in the trial transcript, prior to the complaining witness's father's testimony, where the complaining witness's reputation for truthfulness had been attacked. We thus conclude rule 5.608 does not justify this question by the prosecutor.

With respect to the testimony of Maxwell's wife, the State maintains this line of questioning did not violate the bright-line rule because the State was asking Maxwell's wife to comment on the truthfulness of the prior statements made by the complaining witness and the other youth group member, not the trial testimony. We do not discern the prosecutor made any distinction between the prior statements and the trial testimony of the complaining witness or the other youth group member. We agree with Maxwell that the prosecutor's questions posed to the complaining witness's father and Maxwell's wife violate the bright-line rule prohibiting the questioning of a witness regarding whether another witness is telling the truth. We must then turn to the question of whether

---

[2] Iowa Rule of Evidence 5.608(1) provides:

      a. Opinion and reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, subject to the following limitations:
      (1) The evidence may refer only to character for truthfulness or untruthfulness.
      (2) Evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

counsel's failure to object to these questions caused Maxwell prejudice. *See Bowman*, 710 N.W.2d at 205–06.

With respect to the prejudice prong, we begin by noting this was not a jury trial but a trial to the court.

> [A]n appellate court is less likely to reverse when improper evidence is introduced in bench trials in which the matter is for a judge's determination rather than for determination by a jury. This is because legal training helps equip those in the profession to remain unaffected by matters that should not influence the determination.

*State v. Matheson*, 684 N.W.2d 243, 244 (Iowa 2004) (citation omitted). In *State v. Casady*, 491 N.W.2d 782, 786 (Iowa 1992), the supreme court concluded there was "less danger of unfair prejudice" from the admission of "other-crimes evidence" because the case was tried to the court—"The prejudicial effect of other-crimes evidence is reduced in the context of a bench trial." That is because "[j]udges routinely are called upon to consider the admissibility of evidence that may be later excluded at trial. Judicial knowledge of evidence which is subsequently not admissible does not ordinarily undermine later judicial determinations in the case." *State v. Decker*, 744 N.W.2d 346, 356 (Iowa 2008); *see also State v. Taylor*, 689 N.W.2d 116, 130 (Iowa 2004) ("Clearly the likelihood of an improper use of the evidence is reduced by the fact that the present case was tried to the court.").

The district court's decision finding Maxwell guilty contained the conclusion the court found Maxwell guilty beyond a reasonable doubt of the crime charged by finding each of the elements of the offense. The court then noted it found "the State's witnesses to be credible and the Defendant's

witnesses to not be credible." Maxwell filed a posttrial motion for expanded findings of fact and conclusions of law, asserting the content of the verdict did not satisfy Iowa Rule of Criminal Procedure 2.17(2) and asking the court to more fully detail the evidence considered and articulate the weight the court gave to the various witnesses' testimonies and the various exhibits entered. In denying the motion, the court stated,

> I can tell you right now the court relied upon the entire record. You made some mention that you wanted to know what was relevant. The entire record was relevant. It wouldn't have come in otherwise. It's this court's understanding that I have done what I am required to do by law, to find beyond a reasonable doubt each and every element of the crime charged. I have specifically done that. I have also stated that I find the State's witnesses credible. . . . Based upon the entire record and the Court's reliance on the same in all of the evidence presented at trial, I don't think it's necessary for the Court to expand any further than what I have done. . . . But your motion is overruled in its entirety.

Maxwell does not challenge the form of the verdict on appeal, but he notes the court's statements that the entire record was relevant and relied on show that the improper evidence admitted in this case had a prejudicial effect, both individually and cumulatively. Because of the court's limited findings of fact, we are unable to conclude, based upon the court's written verdict, the court did not consider or weigh the offending evidence. However, in order to find prejudice, we must find that our confidence in the outcome of the trial is undermined based on counsel's failures. *Bowman*, 710 N.W.2d at 206. "[W]e must consider the totality of the evidence, what factual findings would have been affected by counsel's errors, and whether the effect was pervasive or isolated and trivial." *Id.* (citation omitted).

The credibility of the complaining witness was central to the case. This is not a case where there was overwhelming evidence as there was very little physical evidence to support the claims made. However, the court, with legal training, would understand its role was to assess whether a witness was being truthful, and the court would not have been confused about the burden of proof. *See id.* at 207 (noting the State distorted the burden of proof and took the jury's focus away from the State's obligation to prove the defendant guilty beyond a reasonable doubt by focusing on which party was lying). It is also unlikely the court would have been inflamed by Maxwell's wife's answers attacking the credibility of the complaining witness. *See State v. Carey*, 709 N.W.2d 547, 558 (Iowa 2006) (noting the use of the word "liar" is considered misconduct because it is inflammatory and improper). We conclude Maxwell has failed to prove he was prejudiced by the questions posed to his wife regarding whether the complaining witness was lying. Our confidence in the outcome of the trial is not undermined by defense counsel's failure to object to these improper questions in light of the fact the matter was tried to a court and not to a jury.

## IV. Appeal Bond.

In his final claim on appeal, Maxwell asserts the court abused its discretion when it imposed a firearms ban as a condition of his appeal bond. He asserts the nature of the charge he was convicted of has nothing to do with firearms, there was no evidence he was mentally unstable, he has no prior conviction for any violent crime, and he is highly regarded and involved in his community.

"[W]e review the amount and conditions of an appeal bond for an abuse of discretion." *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002).

> The primary purpose of imposing conditions or restrictions on bail following the appeal of a bailable offense is to assure the future appearance of the defendant upon completion of the appeal and to provide for the safety of others during the course of the appeal. Courts have discretion to set the amount and conditions of an appeal bond consistent with this purpose.
> District courts are permitted to consider a variety of factors in setting the amount and conditions of an appeal bond. These factors include the seriousness of the offense and the defendant's prior record.

*Id.* at 726 (internal citations omitted).

In this case, the complaining witness testified, before the incident on March 17, Maxwell had informed her he carried a gun and showed it to her. She testified the presence of the gun prevented her from telling others of the inappropriate contact between the two of them because she was afraid he would shoot her. In exercising its discretion in setting the appeal bond conditions, we conclude the court was permitted to consider the complaining witness's testimony about the effect the presence of the gun had on her, and we find no abuse of discretion in the court imposing such a ban in the appeal bond. *Id.* ("[T]he district court was permitted to give more weight to some factors than to others in determining the conditions of bail.").

**V. Conclusion.**

For the reasons stated herein, we conclude Maxwell did not prove counsel was ineffective in failing to object to leading questions, evidence of prior bad acts, and rebuttal testimony from the State. We conclude he cannot prove counsel's failure to object to prosecutorial misconduct resulted in prejudice.

However, we preserve his ineffective-assistance claim with regard to the potential vouching testimony for possible postconviction-relief proceedings.  We also conclude the district court did not abuse its discretion in imposing a firearms ban as part of the appeal bond.  We therefore affirm Maxwell's conviction.

**AFFIRMED.**