# IN THE COURT OF APPEALS OF IOWA

No. 14-1284
Filed February 10, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JAMES PHILLIP MORGAN,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Des Moines County, Mark E. Kruse, District Associate Judge.

James Morgan appeals his conviction of operating while intoxicated, third offense, asserting claims of ineffective assistance of counsel.  **AFFIRMED.**

William Ray Monroe of the Law Office of William Monroe, Burlington, for appellant.

Thomas J. Miller, Attorney General, and Kevin Cmelik, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**DOYLE, Judge.**

James Morgan appeals his conviction of operating while intoxicated (OWI), third offense, following a jury trial. He asserts his trial counsel rendered ineffective assistance for failing to object to certain testimony and statements. We affirm.

## I. Background Facts and Proceedings.

Around midnight on November 16, 2013, Deputy Ryan Luttenegger observed a U-Haul truck swerving on the highway, crossing both the centerline and the fog line several times. The deputy activated his car's emergency lights, but the truck did not immediately stop. The deputy then turned on the sirens, and the driver, James Morgan, eventually pulled over.

The deputy's body microphone and his patrol car's camera recorded the entire stop. The deputy had to suggest to Morgan that he put his truck in park so that it would not continue to roll forward. The deputy asked where Morgan was coming from, and Morgan told him he was coming from work. The deputy had Morgan step out of the truck, and the video shows Morgan staggering as he gets out of the truck, as well as the deputy helping Morgan walk to the back of the truck, where Morgan stumbles. When asked if he had been drinking, Morgan told the deputy, with slurred speech, he had had three drinks three hours earlier while he was at work. The deputy told Morgan he could "smell alcohol coming from [him]," and he asked Morgan if he would submit to a sobriety test. Morgan refused and was arrested for OWI, third offense.

Morgan was placed in the back of the patrol car and transported to jail. Morgan spoke during the drive to the jail, and his speech was slurred. After exiting the patrol car in the jail's sally-port, Morgan stumbled and continued to talk with slurred speech.

A jury trial was held in April 2014. In his opening statement, the prosecutor stated to the jury, among other things:

> The deputy will tell you that one of the very first things he noticed as he got up to the . . . open window is the strong smell of alcoholic beverage coming from inside of the vehicle. He was able to smell alcohol. And you will hear a recording that was made by the patrol vehicle that the deputy had been driving. And you'll be able to see some of what happened. And you'll be able to hear some of what happened. And you'll be able to hear the deputy ask him about whether he had been drinking. And you'll hear that [Morgan] admits he had three drinks.
> Eventually the . . . deputy asks [Morgan] to get out of the car. And you'll hear that when that happens, [Morgan] gets out and actually falls or starts to fall back into the truck as he was getting out. The deputy, in essence, . . . has to help or starts to help [Morgan] walk towards the rear of the truck. The deputy . . . will tell you that . . . [Morgan] was somewhat unsteady on his feet.
> When they were at the back of the truck, the deputy will tell you that—and again he noticed that he was able to smell this strong smell of alcohol coming from [Morgan]. Now, this is despite the fact that they are outside. There is a breeze out there. Even given those factors, he can still smell the strong smell of alcohol coming from [Morgan].

Morgan's trial counsel made no objections.

Thereafter, the deputy testified essentially as the prosecutor stated he would in the opening statement. The deputy testified Morgan's actions and behaviors were consistent with a person under the influence of alcohol, based upon the following:

> [Morgan's] erratic driving, bouncing within its lane, crossing the centerline multiple times, crossing the fog line; initial

interaction . . . with the cab of his truck; smelling the alcohol very strongly; in allowing him to exit the vehicle, his movements were very unsteady on his feet; movements within the cab as far as very slow hand movements to try to grab items, such as his insurance and registration card; the fact that he knew he didn't have a license and he had to search for his license for approximately a minute or so; the conversation outside the truck, still smelling the alcohol even though . . . we were outside in a very windy setting; the bloodshot, watery eyes; the time confusion, noting that he thought it was 10 p.m. when in reality it was midnight; the admission of drinking prior to getting in his vehicle; the reluctance to tell me what he had drank; and after arresting him and placing him in his vehicle, I continued to smell the alcohol from within my vehicle even though it had not smelled prior to that. And then the admission while at the jail in the intoxilyzer room of making the comment that the subject he was calling was probably drunker than he was at that time.

Morgan's trial counsel made no objections. The video recording was also played for the jury.

After Morgan rested his case, the parties gave their closing arguments. At the end of the State's closing argument, the prosecutor concluded:

Your job here, folks, is to do justice. As the jury members, you're to do justice in this case. And the question that you have to ask yourself is are you convinced that he was driving, which I think is—there's no question, and whether he was under the influence of alcohol. And I'm convinced that you will rely on your common sense that I know you all have and find that [Morgan] is guilty of OWI. Thank you very much for your time.

Morgan's trial counsel made no objections. Ultimately, the jury returned a verdict of guilty as charged.

Morgan now appeals, asserting his trial counsel provided ineffective assistance when counsel failed to object (1) to testimony and statements concerning the smell of alcohol and (2) to alleged prosecutorial misconduct. We address his arguments in turn.

## II. *Ineffective Assistance of Counsel.*

We review ineffective-assistance-of-counsel claims de novo. *See Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015). We generally preserve such claims for postconviction-relief proceedings where a proper record can be developed. *See State v. Null*, 836 N.W.2d 41, 48 (Iowa 2013). However, if the record is sufficient to decide the issue, we may address the claims on direct appeal. *See State v. Ross*, 845 N.W.2d 692, 697 (Iowa 2014). We find the record adequate here.

To prevail on a claim of ineffective assistance of counsel, Morgan must prove both that (1) his counsel failed to perform an essential duty and (2) he suffered prejudice as a result of his counsel's failure. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Dempsey*, 860 N.W.2d at 868. "We can resolve ineffective-assistance-of-counsel claims under either prong of the analysis." *State v. Ambrose*, 861 N.W.2d 550, 556 (Iowa 2015).

### A. *Smell of Alcohol.*

Morgan first argues his trial counsel was ineffective for failing to object to testimony and statements concerning the smell of alcohol. Though he points out the Iowa Supreme Court long ago stated it was common knowledge "that alcohol has a distinctive odor," *see State v. Ling*, 199 N.W. 285, 286 (Iowa 1924), Morgan seems to argue that that knowledge is untrue or unproven. Alternatively, he argues that even if we agree that alcohol has a distinctive odor, that a defendant smells of alcohol is not proof of intoxication.

First, Morgan's suggestion that the court's statement in *Ling*—that alcohol has a commonly-associated smell—is "utterly absurd" or "silly" is not supported by any evidence or binding authority to the contrary. Perhaps there may not always be a "smell" when a person consumes an alcoholic beverage, but it is still well-known that there can be an odor following the consumption of alcoholic beverages, and that smell is distinctive. *See Ling*, 199 N.W. at 286; Herbert Moskowitz et al., *Police Officers' Detection of Breath Odors from Alcohol Ingestion*, 31 Accident Analysis & Prevention 175, 179 (1999) (finding that "there were only small differences in the intensity of the odor as a function of the type of [alcoholic] beverage" detected by officers in the study, suggesting "the fusel oils and other chemical constituents of many alcoholic beverages are not the prime determinant of odor after the beverage is fully absorbed" and "that what is detected in the breath may be a constituent of the metabolization of alcohol"); *see also* Lance Gooberman & Ashley E. Killeen, *Using the Diagnostic and Statistical Manual to Raise the NHTSA-Created Low Threshold for Diagnosing Alcohol Intoxication*, *in* Understanding DUI Scientific Evidence (2013 ed. 2013) [hereinafter *Using the DSM*], Westlaw 2013 WL 6140723, at *12 ("The odor of an alcohol beverage is primarily due to congeners. Congeners include [fusel] oils, which are alcohols."); Jack Stuster, Nat'l Highway Traffic Safety Admin., DOT HS 808 654, *The Detection of DWI at BACs Below 0.10*, 13-14 tbl.3 (Sept. 12, 1997) (final report), ntl.bts.gov/lib/25000/25900/25950/DOT-HS-808-654.pdf (noting that odor of alcohol was one of several post-stop cues indicating intoxication).

As to Morgan's second statement, it is true that the smell of alcohol does not, by itself, evidence a person is intoxicated. *See, e.g.*, *Taylor v. United States*, 286 U.S. 1, 6 (1932) ("Prohibition officers may rely on a distinctive odor as a physical fact indicative of possible crime; but its presence alone does not strip the owner of a building of constitutional guaranties (Const. Amend. 4) against unreasonable search."); *Using the DSM*, 2013 WL 6140723, at *12 ("[T]he odor of alcohol on the breath is only qualitative, not quantitative. The presence of such an odor does not equate to intoxication: . . . 'even under optimum laboratory conditions, breath odor detection is unreliable . . . .' In other words, the nose does not know. It may be a detector, but it is certainly not a measuring tool." (citation omitted)). But "intoxication is an observable condition about which a witness may testify." 8 Am. Jur. 2d *Automobiles* § 982 (2016); *see also State v. Murphy*, 451 N.W.2d 154, 156 (Iowa 1990) (noting "it has long been held that a witness, either lay or expert, may testify to an 'ultimate fact which the jury must determine,'" including an officer's personal observation regarding a defendant's insobriety (citation omitted)); *State v. Kestle*, 996 So. 2d 275, 279 (La. 2008) ("It has been widely recognized that intoxication, with its behavioral manifestations, is an observable condition about which a witness may testify."). "[C]ommon indicia of intoxication include an odor of alcohol, bloodshot and watery eyes, slurred speech, and an uncooperative attitude." 61A C.J.S. *Motor Vehicles* § 1518 (2016); *see also* World Health Org., Dep't of Injuries & Violence Prevention, *Alcohol and Injury in Emergency Departments: Summary of the Report from the WHO Collaborative Study on Alcohol and Injuries*, 3 (2007),

http://www.who.int/substance_abuse/publications/alcohol_injury_summary.pdf (stating evidence of mild and moderate alcohol intoxication includes smell of alcohol on breath, behavioral disturbance in functions and responses, or difficulty in coordination). While "[p]roof . . . that the defendant's breath smelled of liquor . . . is not in itself sufficient to show that the defendant was intoxicated or under the influence of intoxicating liquor," "it is not necessary that the prosecution show that the defendant was in a drunken stupor." 8 Am. Jur. 2d *Automobiles* § 982.

Here, the deputy testified he smelled the odor of alcohol coming from Morgan, along with several other well-recognized intoxication indicators. Because alcohol can be smelled on one's breath, because detection of such is an indicium of intoxication, and because an officer can testify about his personal observations regarding a person's insobriety, Morgan's claim is without merit. His trial counsel had no duty to object to the smell or odor testimony, and Morgan has failed to establish his trial counsel was ineffective in this respect.

### B. Prosecutorial Misconduct.

Morgan next contends his trial counsel was ineffective in failing to object to several instances of alleged prosecutorial misconduct. In analyzing Morgan's ineffective-assistance-of-counsel claim concerning prosecutorial misconduct,

> our first step is to assess whether the record demonstrates, as a matter of law, the existence or absence of a meritorious due process violation. Thus, we must consider whether the prosecutor was guilty of misconduct in the particulars identified by [the defendant] and whether the record shows [the defendant] was prejudiced, i.e., denied a fair trial.
> If . . . the record shows that either element is lacking as a matter of law, we will affirm [the defendant's] conviction without

preserving his due process claim for a later postconviction relief action.

*State v. Graves*, 668 N.W.2d 860, 869-70 (Iowa 2003).

"It is of course the duty of a prosecuting officer to present the [S]tate's cause zealously and effectively within proper bounds," *State v. Comes*, 62 N.W.2d 753, 757 (Iowa 1954), and "some latitude" is given to a prosecutor's closing arguments that scrutinize the evidence admitted at trial.  *See Graves*, 668 N.W.2d at 874.  Specifically, the prosecutor is permitted to "argue the reasonable inferences and conclusions to be drawn from the evidence."  *Id.*  "[M]isconduct does not reside in the fact that the prosecution attempts to tarnish [a] defendant's credibility or boost that of the State's witnesses; such tactics are not only proper, but part of the prosecutor's duty."  *State v. Carey*, 709 N.W.2d 547, 556 (Iowa 2006).  However, the prosecutor cannot assert a personal opinion, create evidence, misstate the law, or suggest that the jury decide the case on any ground other than the weight of the evidence introduced at trial.  *See State v. Shanahan*, 712 N.W.2d 121, 139-40 (Iowa 2006); *Graves*, 668 N.W.2d at 874; *State v. Williams*, 334 N.W.2d 742, 744 (Iowa 1983).  Nevertheless, "[t]he governing principle does not preclude all personalized remarks; it merely precludes those that do not appear to be based on the evidence."  *Williams*, 334 N.W.2d at 745.

### 1.  *Support of Morgan's Weight.*

Morgan first argues

there was prosecutor misconduct during the trial in that the State asserted the [deputy] had to support [Morgan's] weight "a few times" when [Morgan] walked from the front to the back of his truck

after being stopped. However, the video clearly shows that the officer did no such thing. Further, given the obvious sheer physical bulk of Morgan and that Deputy [Luttenegger] is much smaller and held his arm out at a 45 degree angle from his body while walking casually and even swaying from side to side slightly himself, it was not physically possible for [Luttenegger] to support Morgan's weight without having shown some effort to do so during the video. The video shows no such physical effort on behalf of the [d]eputy. Instead, the [d]eputy and [Morgan] casually walk to the back of the truck with the deputy merely holding onto [Morgan's] belt and it is obvious the [d]eputy is supporting nothing but his own arm's weight during this entire time.

[Morgan's trial] counsel was ineffective for failing to object to the [d]eputy's testimony in this regard because this was simply completely untrue.

Having viewed the video, we believe it depicts the deputy supporting Morgan's weight when Morgan was walking to the back of the truck and when he was in the jail's sally-port. The prosecutor's statements were certainly not "completely untrue." In any event, the jury viewed the video and was able to make its own determination of whether the deputy's testimony, including that he had to support Morgan's weight, was credible. *See State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006). "The jury is free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in its judgment such evidence should receive." *State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993). The "very function of the jury is to sort out the evidence presented and place credibility where it belongs." *State v. Blair*, 347 N.W.2d 416, 420 (Iowa 1984); *see also State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) ("It is not the province of the court . . . to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury.").

The prosecutor's statements were reasonable inferences and conclusions that could be drawn from the evidence presented at trial. Because there was no prosecutorial misconduct in this respect, Morgan's trial counsel had no duty to object. Consequently, Morgan has failed to establish his counsel rendered ineffective assistance on this point.

### 2. Opinion Statements in Closing Arguments.

Finally, Morgan asserts the prosecutor "also improperly asserted his own opinion as to Morgan's guilt during final arguments." However, we are not convinced the prosecutor injected a personal opinion in his closing argument. The prosecutor clearly stated to the jury that its task was "to do justice in this case" and that it was to determine if the State proved Morgan was guilty of OWI.

Nevertheless, even if the prosecutor had engaged in any misconduct, Morgan has not established he did not receive a fair trial. *See Graves*, 668 N.W.2d at 869 ("[I]t is the prejudice resulting from misconduct, not the misconduct itself, that entitles a defendant to a new trial."). There was strong evidence of Morgan's guilt, beyond the deputy's observation of the odor of alcohol coming from Morgan. The video shows the truck swerving and Morgan talking with slurred speech, stumbling, and generally acting the way an intoxicated person acts. Morgan even admitted he had been drinking, though he claimed it was three hours earlier, and then proceeded to demonstrate he did not know the time. One of these evidentiary items, by itself, might not support a strong inference of intoxication. But here, the many indicia of intoxication

demonstrated by Morgan, directly observable on the videotape, support the guilty verdict. Morgan has failed to establish his counsel was ineffective in this regard.

### III. Conclusion.

Because Morgan has failed to establish his trial counsel rendered ineffective assistance, we affirm his conviction of OWI, third offense.

**AFFIRMED.**