# IN THE COURT OF APPEALS OF IOWA

No. 15-1166
Filed January 11, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**THOMAS GUY HENDERSON,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Carroll County, Timothy J. Finn, Judge.

The defendant appeals his two convictions for first-degree murder claiming counsel provided ineffective assistance, the trial court improperly admitted a hearsay statement, and the court abused its discretion in denying his motion for mistrial. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee.

Heard by Vaitheswaran, P.J., and Potterfield and Bower, JJ.

**POTTERFIELD, Judge.**

Thomas Guy Henderson appeals his conviction for two counts of first-degree murder, in violation of Iowa Code sections 707.1 and 707.2 (2013). On appeal, Henderson claims he received ineffective assistance from counsel, the trial court improperly admitted a hearsay statement, and the court abused its discretion in denying his motion for mistrial. After careful review, we affirm.

**I. Background Facts and Proceedings.**

The female decedent lived in a small community in Glidden. Her neighbors testified they knew her daily routine of checking her mail and taking her pets outside, and how she had a habit of keeping her front gate closed. On May 18, 2014, the neighbors noticed the female decedent's front gate remained open all day, which was unusual. They walked from their home across the way to the female decedent's home and knocked on her front door.

While knocking, the neighbors testified they yelled the female decedent's name. The female decedent did not respond, but they heard a dog barking, so one of the neighbors entered the home and shouted for her again. When the neighbor entered, she saw a body on the floor of the living room. The neighbor testified she then backed out of the home. The other neighbor then entered the home and, upon seeing a deceased body on the floor, also left the home. The neighbors called 911, and responding officers found two deceased persons in the home—the male decedent in the living room and the female decedent in a bedroom.

Local law enforcement and Iowa Division of Criminal Investigations investigated the scene and found neither signs of forced entry into the home nor

that a struggle had ensued inside. They concluded that at least one of the victims must have known the killer.

At the scene, officers recovered two weapons. First, they recovered a "Yoshiblade" from a corner of the couch in the living room where they found the male decedent. They also recovered an additional knife's blade near the male decedent's body. The knives both had blood on them.

They also noticed the female decedent had a half-finished tattoo on her leg. They consulted with a local tattoo artist who opined the tattoo appeared to be recently done. Items related to tattooing were located throughout the home.

During the investigation and after speaking with neighbors, investigators determined the last time it could be confirmed both decedents were alive was on Friday, May 16. The male decedent visited a local convenient store and appeared on the store's surveillance camera at 7:25 p.m., and the female decedent spoke with a relative on the phone at 9:48 p.m. Both neighbors who discovered the bodies testified they saw a dark-colored Pontiac car going and coming from the female decedent's home on May 16 and 17. One neighbor testified she saw two men, possibly teenagers, with dark hair and clothing in the Pontiac. Neither neighbor testified they saw Henderson at the female decedent's home. The neighbors also testified they did not know the male decedent well because he was not a frequent visitor to the female decedent's home.

Days after the murders, a runner and a horseback-rider separately found two pieces of a wallet, later determined to belong to the male decedent. The items were found in Lake City, on the side of the road. This led investigators to

look more closely at Henderson, as his name had been mentioned during various interviews and the wallet was located near his apartment complex.

On June 3, 2014, Special Agent Chad Fielder interviewed Henderson, who admitted to knowing the female decedent. He told Fielder he had been to the female decedent's home between nine and thirteen times in the past to purchase marijuana from another individual, but that he had stopped because he had been "shorted" a few times. Fielder testified at trial that during this interview with Henderson, he quickly looked over Henderson's hands and exposed portions of his body for any visible injuries but did not see any. Fielder also testified Henderson did not express any anger or animosity towards the female decedent or the individual who "shorted" his marijuana purchases. Fielder also noted there was no evidence Henderson knew the male decedent.

Officers then searched Henderson's apartment twice. Officers located an amateur tattoo kit containing similar needles as those observed in the female decedent's home.

The medical examiner performed autopsies on both decedents. The autopsy determined the male decedent had defensive wounds and died as a result of blunt-force trauma and sharp-force trauma to his body. A portion of the Yoshiblade blade tip was also found broken off in his skull. The female decedent also had defensive wounds and died as a result of blunt-force trauma to her head and neck region. It also showed she suffered skull, wrist, and rib fractures.

The two knives seized from the home were tested for DNA. The handles of both knives contained DNA that matched the known profile of Henderson.

On June 24, 2014, Henderson was charged by trial information with two counts of first-degree murder, to which Henderson pled not guilty. Although he initially demanded a speedy trial, he waived that right on July 11. The jury trial began on May 12, 2015, and the jury found Henderson guilty on both counts. The court then sentenced Henderson to serve an indeterminate term of imprisonment for the rest of his life for each charge and ordered those sentences to run consecutively. Henderson was also ordered to make restitution payments to the decedents' estates, payments to the crime victim compensation program and county, and reimbursement payments for court costs and attorney fees.

Henderson filed his notice of appeal on July 6, 2015.

**II. Standard of Review.**

Henderson raises his challenge to the weight of the evidence as an ineffective-assistance-of-counsel claim, which we review de novo because the claim implicates the Sixth Amendment right to counsel. *See State v. McCoy*, 692 N.W.2d 6, 14 (Iowa 2005). Henderson must prove his trial counsel failed to perform an essential duty and this failure resulted in prejudice to him. *Id.* While we do not normally decide claims of ineffective assistance on direct appeal, we will address the claim when the record is clear. *Id.*

Henderson also challenges the sufficiency of the evidence, which we review for correction of legal error. *See State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011).

Evidentiary rulings are reviewed for an abuse of discretion. *State v. Huston*, 825 N.W.2d 531, 536 (Iowa 2013). "[T]he admission of claimed hearsay

evidence is reviewed for correction of errors at law." *State v. Shipley*, 757 N.W.2d 228, 231 (Iowa 2008).

We generally review a district court's denial of a motion for a mistrial for an abuse of discretion. *See State v. Gathercole*, 877 N.W.2d 421, 427 (Iowa 2016).

**III. Discussion.**

**A. Ineffective Assistance of Counsel.**

First, Henderson contends the evidence was insufficient and contrary to the weight of the evidence to prove he committed the crimes. This claim was not preserved and so is presented as a claim that trial counsel was ineffective for failing to properly raise the sufficiency and weight-of-the-evidence issues with the district court and for failing to file a motion for new trial.

To prove his claims of ineffective assistance of counsel, Henderson must prove by a preponderance of the evidence that counsel failed to perform an essential duty and he suffered prejudice as a result. *See State v. Morgan*, 877 N.W.2d 133, 136 (Iowa Ct. App. 2016). The claim fails if either prong is not proved. *Id.* When a defendant chooses to raise an ineffective-assistance-of-counsel claim on direct appeal, we may either determine the record is adequate and decide the claim or find the record is inadequate and preserve the claim for postconviction proceedings. *See State v. Neitzel*, 801 N.W.2d 612, 624 (Iowa Ct. App. 2011).

To prove the first prong of this claim, Henderson must show counsel's performance fell outside the normal range of competency. *See State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). Starting "with the presumption that the attorney performed his duties in a competent manner," "we measure counsel's

performance against the standard of a reasonably competent practitioner." *State v. Maxwell*, 743 N.W.2d 185, 195-96 (Iowa 2008). Although counsel is not required to predict changes in the law, counsel must "exercise reasonable diligence in deciding whether an issue is 'worth raising.'" *State v. Westeen*, 591 N.W.2d 203, 210 (Iowa 1999) (quoting *State v. Schoelerman*, 315 N.W.2d 67, 72 (Iowa 1982)). In accord with these principles, we have held that counsel has no duty to raise an issue that has no merit. *State v. Schaer*, 757 N.W.2d 630, 637 (Iowa 2008). The second prong of prejudice exists "when it is 'reasonably probable that the result of the proceeding would have been different.'" *Id.* at 638 (quoting *State v. Henderson*, 537 N.W.2d 763, 765 (1995)).

Henderson first argues his trial counsel was ineffective for making only a general motion for judgment of acquittal and not specifying what elements were lacking, thereby failing to preserve error on his sufficiency-of-the-evidence and weight-of-the-evidence claims. A general motion for judgment of acquittal that does not identify the specific elements of the charge claimed to be insufficiently supported by the evidence does not preserve error for appellate review. *See State v. Greene*, 592 N.W.2d 24, 29 (Iowa 1999) (citing *State v. Crone*, 545 N.W.2d 267, 270 (Iowa 1996)). However, we will address each claim under the ineffective-assistance-of-counsel framework. *See State v. Ondayog*, 722 N.W.2d 778, 784 (Iowa 2006) (providing that an ineffective-assistance claim need not comport with standard error-preservation rules).

### 1. Sufficiency-of-the-Evidence Claim

Henderson argues his trial counsel provided ineffective assistance by failing to properly raise a sufficiency-of-the-evidence claim at trial. Henderson's

counsel moved for judgment of acquittal at the close of the State's case and renewed the motion at the close of his case. In both motions, counsel generally argued the State failed to meet the elements of the charged crimes.

In our review for correction of legal error, we will uphold the jury's verdict if it is supported by substantial evidence. *See State v. Bash*, 670 N.W.2d 135, 137 (Iowa 2003). "Evidence is substantial if it would convince a rational factfinder that the defendant is guilty beyond a reasonable doubt." *Id.* (citation omitted). "Substantial evidence to support a verdict can be present, even if there is substantial evidence to the contrary." *State v. Helm*, 504 N.W.2d 142, 146 (Iowa Ct. App. 1993). However, we review all of the evidence, "including legitimate inferences and presumptions that may fairly be deduced from the evidence, in the light most favorable to the State." *State v. Sudbeck*, No. 15-0596, 2016 WL 3003407, at *2 (Iowa Ct. App. May 25, 2016) (citing *Bash*, 670 N.W.2d at 137).

The State bears the "burden to prove every fact necessary to constitute the claims with which the defendant is charged," and the State's evidence "must raise a fair inference of guilty and do more than create speculation, suspicion, or conjecture" to be substantial. *Id.* Where, as here, the marshalling instruction is given without objection, the instruction is the law of the case for purposes of reviewing the sufficiency of the evidence. *See State v. Canal*, 771 N.W.2d 528, 530 (Iowa 2009).

Here, the marshalling instructions provided as follows:

> 1. On or about May 16, 17, or 18, 2014, the defendant struck the female decedent.
> 2. The female decedent died as a result of being struck.
> 3. The defendant struck the female decedent with malice aforethought.

4. The defendant struck the female decedent willfully, deliberately, premeditatedly and with a specific intent to kill her.

5. The defendant was not justified.

The jury was also instructed Henderson was guilty of first degree murder of the male decedent if it found the following:

1. On or about May 16, 17, or 18, 2014, the defendant struck and stabbed the male decedent.

2. The male decedent died as a result of being struck and stabbed.

3. The defendant struck and stabbed the male decedent with malice aforethought.

4. The defendant struck and stabbed the male decedent willfully, deliberately, premeditatedly and with a specific intent to kill him.

5. The defendant was not justified.

The marshalling instructions were correct statements of the elements of the offenses. *See* Iowa Code §§ 707.1, 707.2.

On this appeal, Henderson generally maintains the record does not support his identity as the person who committed first-degree murder of both decedents. He cites to circumstantial evidence used in the prosecution against him and to the absence of evidence. Specifically, he contends the tattoo kit seized from his apartment does not link him to the murders, no evidence exists to place him at the crime scene, he never admitted guilt of the crimes, and the DNA evidence used against him does not support a finding of guilt because the DNA evidence was never corroborated.

We take up each contention separately. First, it is plausible the jury could have inferred the tattoo kit seized from Henderson's home was a circumstantial link to the crime scene, given the jury received expert testimony from a professional tattoo artist the female decedent had a "freshly-done" and half-

completed tattoo and that some of the items seized from the crime scene appeared to match items from Henderson's kit. Henderson questions the expert's testimony regarding the operability of the tattoo kit seized from his home. Although the expert testified the machine was brought to him in nonworking condition, he stated the machine could easily be repaired by someone who knew how to solder. The expert also testified the gloves could have been tested for DNA and the needles could have been matched up to the kit found in Henderson's home had they been collected. Ultimately, the jury was given several pieces of evidence to consider, and it is reasonable it could infer the kit from Henderson's home and the items collected from the crime scene shared some connection.

Second, Henderson claims there is no evidence putting him at the crime scene. However, the jury heard evidence Henderson's DNA was on the handles of two knives found near one of the bodies at the female decedent's home. Albeit circumstantial evidence, "direct and circumstantial are equally probative." *See* Iowa R. App. P. 6.904(3)(p). And our "use of such circumstantial evidence is limited only by the rule that, like direct evidence, it must 'raise a fair inference of guilt; it must do more than create speculation, suspicion, or conjecture.'" *State v. Clarke*, 475 N.W.2d 193, 197 (Iowa 1991) (citing *State v. Blair*, 347 N.W.2d 416, 421 (Iowa 1984)). Henderson's DNA on the knives leads to a fair inference of Henderson's presence at the crime scene and his use of two of the murder weapons, an inference that is not based upon speculation, suspicion, or conjecture.

Third, Henderson argues he has never admitted to committing the crimes and the State never proved a motive for the crimes. Nothing requires a defendant admit to a crime to be convicted; the State must prove each element of the charged offense beyond a reasonable doubt to sustain the conviction. *See* Iowa R. Crim. P. 2.22. Moreover, the State need not have proved a motive for the crime to convict Henderson. *See State v. Knox*, 18 N.W.2d 716, 724 (Iowa 1945) (stating "motive is not an element of a crime and proof thereof is not essential to sustain a conviction").

Finally, Henderson argues the DNA evidence by itself is not sufficient to support his convictions. Henderson urges us to consider the DNA as evidence of identity and not of guilt. When coupled with the location of Henderson's DNA—the handles of two knives located near the male decedent's body, which had sustained multiple stab wounds—the DNA is probative on identity and guilt. Additionally, Henderson posits no other circumstantial evidence connects him to the crime. However, other pieces of circumstantial evidence do connect him: he admitted to knowing the female decedent, having been to her home on multiple occasions to purchase marijuana; the female decedent's freshly-done tattoo and the tattoo kit located in Henderson's home; and the male decedent's wallet being recovered near Henderson's home. Ultimately, there was more than just DNA evidence to consider in this case.

Therefore, we find there was sufficient evidence to sustain Henderson's two first-degree murder convictions. Any element-specific motion made by trial counsel regarding the sufficiency of the evidence would have been fruitless, and counsel is not required to advance meritless arguments. *See State v. Dudley*,

766 N.W.2d 606, 620 (Iowa 2009). Thus, Henderson cannot maintain his ineffective-assistance claim as it pertains to this issue because he cannot show he was prejudiced. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (holding "the defendant must show that counsel's deficient performance prejudiced the defense"). We affirm on this issue.

### 2. Weight-of-the-Evidence Claim

Henderson next contends his counsel rendered ineffective assistance by failing to file a motion for new trial on the ground the verdict was contrary to the evidence. *See* Iowa R. Crim. P. 2.24(2)(b)(6) (allowing a defendant to seek a new trial when the verdict is contrary to the law or evidence). Contrary to the evidence means contrary to the weight of the evidence. *See State v. Reeves*, 670 N.W.2d 199, 201 (Iowa 2003). "Unlike the sufficiency-of-the-evidence analysis, the weight-of-the-evidence analysis is much broader in that it involves questions of credibility and refers to a determination that more credible evidence supports one side than the other." *State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006). "The granting of a new trial based on the conclusion that the verdict is against the weight of the evidence is reserved for those situations in which there is reason to believe that critical evidence has been ignored in the fact-finding process." *State v. Grant*, 722 N.W.2d 645, 648-49 (Iowa 2006). While the district court has wide discretion in deciding motions for a new trial, it must exercise such discretion "carefully and sparingly" as not to "lessen the role of the jury as the principal trier of the facts." *State v. Ellis,* 578 N.W.2d 655, 659 (Iowa 1998). A new trial should only be granted in the "exceptional case" where the

evidence "preponderates heavily against the verdict." *Reeves*, 670 N.W.2d at 202.

On our review, there is no reason to believe the jury ignored critical evidence or that its verdict is against the weight of the evidence. Henderson's counsel had no duty to file a meritless motion. *See Dudley*, 766 N.W.2d at 620. Further, there has been no showing of prejudice. To prove the requisite prejudice, Henderson must show that had his attorney moved for a new trial under *Ellis,* a reasonable probability existed the district court would have found his to be the exceptional case meriting relief. *See Neitzel*, 801 N.W.2d at 626. Having found no reasonable probability the district court would have done so, we affirm on this issue.

**B. Hearsay Objection.**

Henderson next contends the trial court erred when it admitted a statement Henderson contends is hearsay not falling within any exception to the general rule. Henderson claims the admission of this statement prejudiced him and entitled him to a mistral, which he requested and the court denied.

During the State's case, Special Agent Fielder testified. The following exchanged occurred:

> THE STATE: You were asked also about the statement that he gave you. Did he ever tell you that he had [the female decedent's] phone number so he could call her about giving her a tattoo? FIELDER: No.
> THE STATE: Did you get that information from someone else? FIELDER: I did.
> THE STATE: Who?
> DEFENSE COUNSEL: Objection, Your Honor. This is hearsay.
> THE COURT: Overruled.

THE STATE: Who? FIELDER: The defendant's brother . . . .

"Hearsay is a statement, other than one by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Iowa R. Evid. 5.801(c). Such a statement "is not admissible unless it is exempt from the rule or falls within one of the exceptions." *See* Iowa R. Evid. 5.802.

Here, Henderson objected to the "who" question, which is not hearsay and does not call for a hearsay answer. In this context, identifying the person who shared information with Fielder is not an out-of-court statement. *See id.* Therefore, the trial court did not err in overruling Henderson's objection.

Henderson argues his objection was to the "did-he-ever-tell-you" question; however, the lodged objection came too late for our review. Objections made after the court has admitted the statement are too late to preserve error on those grounds. *See State v. Lawton*, No. 13-0605, 2014 WL 1715064, at *5 (Iowa Ct. App. Apr. 30, 2014); *see also Roberts v. Newville*, 554 N.W.2d 298, 300 (Iowa Ct. App. 1996) (stating "[e]rror may not be predicated upon a ruling admitting evidence unless a timely and specific objection is made at trial"). Because we find the question did not call for hearsay and the court did not err in so ruling, we likewise do not find the trial court abused its discretion in denying Henderson's motion for mistrial.

Henderson urges our review of this issue within an ineffective-assistance-of-counsel framework as well. Henderson claims the "did-he-ever-tell-you" question was hearsay and not within any exception so as to allow its

admissibility; thus, he contends counsel was ineffective for failing to lodge a timely objection.

Admission of a hearsay statement is prejudicial to the non-offering party unless the contrary is shown. *See State v. Ross*, 573 N.W.2d 906, 910 (Iowa 1998). "In considering whether the admission of hearsay is reversible error, we have held that notwithstanding the presumption of prejudice from the admission of such evidence, the erroneously admitted hearsay will not be considered prejudicial if substantially the same evidence is properly in the record." *State v. Newell*, 710 N.W.2d 6, 19 (Iowa 2006). The admission of hearsay statements can be harmless if other sources duplicate the testimony. *State v. Johnson*, 272 N.W .2d 480, 482–83 (Iowa 1978).

Here, Henderson contends Fielder's statement provided a crucial nexus connecting him to the two decedents. However, Henderson admitted he knew the female decedent because he used to purchase marijuana at her home and had done so multiple times; Henderson had already connected himself to the female decedent prior to the admission of this statement and such information was already before the court. Therefore, the statement was cumulative.

Henderson's claim of ineffective assistance of counsel then must fail given that he cannot show he was prejudiced by the admission of the statement. Given that he cannot do so, we need not consider whether counsel was ineffective in failing to object. *See Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015) (holding that if the defendant fails to establish either element of his ineffective-assistance claim, we need not address the remaining element).

We affirm.

**AFFIRMED.**