**IN THE COURT OF APPEALS OF IOWA**

No. 17-0806
Filed September 26, 2018

**JOE LOUIS BYRD,**
     Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
     Respondent-Appellee.
_____

     Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.

     Applicant appeals the district court decision denying his request for postconviction relief from his conviction of first-degree robbery. **AFFIRMED.**

     Clemens A. Erdahl of Nidey Erdahl Fisher Pilkington & Meier, PLC, Cedar Rapids, for appellant.

     Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.

     Considered by Vogel, P.J., Tabor, J., and Scott, S.J.*

     *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**SCOTT, Senior Judge.**

Joe Byrd appeals the district court decision denying his request for postconviction relief from his conviction of first-degree robbery. Byrd has not shown he received ineffective assistance based on his claims defense counsel failed to: (1) file a motion to suppress, (2) impeach the testimony of a witness, (3) object to prosecutorial misconduct, (4) claim the State concealed exculpatory evidence, and (5) address the issue of juror misconduct. We conclude Byrd has not shown he received ineffective assistance, whether the claims are considered individually or cumulatively. We affirm the district court's decision denying his request for postconviction relief.

## I.    Background Facts & Proceedings

On May 16, 2007, Special Agent Ron Hallock of the Iowa Division of Narcotics Enforcement, and a cooperating individual, Joshua Moore, made arrangements to purchase crack cocaine and a handgun from Littoree Dock. Agent Hallock wore an electronic transmitter for the transaction. Agent Hallock and Moore went to an arranged location, where Dock met them in the front yard and indicated they should enter an apartment. The apartment was leased by Byrd.

Immediately after entering, Agent Hallock was struck in the head. Several items were taken from Agent Hallock, including $3000 in government money, a state-issued cell phone, and personal items. Agent Hallock stated a code word to officers listening to the electronic transmissions so they would know he needed assistance. Officers entered the apartment, where they apprehended Byrd. Moore told officers Byrd put a black gun in his face and asked him to empty his wallet.

Officers later apprehended Dock and DeMarco Henderson, who were also in the apartment at the time of the incident.

Later that day, officers went back to the apartment. According to officers, Byrd's mother, Cassandra Ntow,[1] told them her name was on the lease and she paid the rent. Ntow gave consent to a search of the apartment. Officers found a black gun, which was identified by Moore as the weapon used by Byrd.

Byrd, Dock, and Henderson were charged with robbery in the first degree, in violation of Iowa Code section 711.2 (2007). On the day scheduled for trial, September 19, 2007, the district court determined Byrd's trial should be severed because different evidence would be admissible in his trial. The court stated that if a motion for a continuance was made it would be granted. Byrd agreed to go forward with the trial that day. A jury found Byrd guilty of first-degree robbery. His conviction was affirmed on appeal. *See State v. Byrd*, No. 07-1936, 2009 WL 2392081, at *5 (Iowa Ct. App. Aug. 6. 2009).

Byrd filed an application for postconviction relief on March 18, 2010, claiming he received ineffective assistance of counsel.[2] The district court found Byrd failed to show he received ineffective assistance because defense counsel did not (1) file a motion to suppress, (2) adequately impeach the testimony of Moore, (3) object to alleged prosecutorial misconduct, (4) seek an audio tape of an interview of Byrd, and (5) object to alleged juror misconduct. The court denied

---

[1] Cassandra Ntow's last name is found variously in the record as Entoe, Entow, and Etoe. In a written statement, her name is given as Ntow, so she will be referred to as such.

[2] For various reasons, it took more than six years before there was a hearing on Byrd's postconviction claims. Byrd had a succession of seven different attorneys through the years, each asking for continuances. In addition, Byrd filed multiple pro se discovery requests and proposed amendments to his application for postconviction relief.

Byrd's request for postconviction relief. Byrd filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2). In ruling on the motion, the court denied Byrd's claim he was entitled to relief based on cumulative errors by defense counsel. Byrd now appeals.

## II. Standard of Review

We conduct a de novo review of claims of ineffective assistance of counsel. *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). To establish a claim of ineffective assistance of counsel, an applicant must prove (1) counsel failed to perform an essential duty and (2) prejudice resulted to the extent it denied the defendant a fair trial. *Id.* An applicant's failure to prove either element by a preponderance of the evidence is fatal to a claim of ineffective assistance. *State v. Polly*, 657 N.W.2d 462, 465 (Iowa 2003).

## III. Ineffective Assistance

**A.** *Motion to Suppress*

(1) Byrd claims he received ineffective assistance because defense counsel did not file a motion to suppress evidence obtained from the three instances when police officers entered his apartment. In the first instance, Agent Hallock entered the residence at the invitation of Dock. As the district court noted, "Hallock and Moore had no reason to believe that Dock did not have the authority to invite them into the apartment." Officers may rely on the apparent authority of a party to consent to a search. *State v. Jackson*, 878 N.W.2d 422, 429 (Iowa 2016). "The doctrine of consent by apparent authority allows the government to demonstrate an officer who conducted a warrantless search was authorized to do so because the officer 'reasonably (though erroneously)' relied on the apparent

authority of the person who consented to the search." *Id.* (citation omitted). Agent Hallock reasonably believed Dock had apparent authority to consent to his entry into the apartment and, therefore, the entry did not violate the Fourth Amendment. *See id.* at 430 ("[T]he Fourth Amendment requires law enforcement to make reasonable, not perfect, factual determinations concerning the scope of authority possessed by a person who consents to a search.").

(2) In the second instance, officers entered Byrd's apartment after Agent Hallock said the code word that indicated he was in trouble and needed assistance. The exigent circumstances exception to the warrant requirement permits a warrantless search when an emergency gives officers insufficient time to seek a warrant. *State v. Pettijohn*, 899 N.W.2d 1, 17 (Iowa 2017). The officers' entry into Byrd's apartment in the second instance was permissible under the exigent circumstances exception.

(3) The third instance arose when officers returned to Byrd's apartment later on May 16, 2007. In a deposition, Officer Jonathan Borg testified Ntow told him "she owned the house or rented the house." Officer Borg stated Ntow consented to the search of the residence. In December 2007, Ntow signed a statement stating she did not give officers permission to search Byrd's apartment. Based on testimony that Ntow stated she owned or rented the house, officers could reasonably believe she had apparent authority to consent to a search. *See Jackson*, 878 N.W.2d at 429.

Additionally, defense counsel stated he did not file a motion to suppress because the State informed him all plea deals would be withdrawn if the motion was filed and Byrd did not contest the evidence obtained in the search, so he made

the strategic decision to not file a motion to suppress. We agree with the district court's statement, "Filing a motion to suppress evidence that [Byrd] did not contest, and that would shut off [Byrd's] avenues to a plea deal, would not have been reasonable under the circumstances." *See Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001) (noting "strategic decisions made after 'thorough investigation of law and facts relevant to plausible options are virtually unchallengeable'" (citation omitted)).

We conclude Byrd has not established by a preponderance of the evidence that defense counsel breached an essential duty by failing to file a motion to suppress evidence obtained in the three instances when officers entered his apartment. Byrd has not shown he received ineffective assistance on these grounds.

**B.** *Impeachment of Witness*

Byrd claims he received ineffective assistance because defense counsel did not adequately impeach the testimony of Moore. Moore testified during the criminal trial on September 20, 2007. Moore stated he volunteered to cooperate with officers. He was asked:

> Q. Were you in any criminal trouble when you did that? A. No, sir.
> Q. Did you ask for or was there any deal to be made for you for any pending criminal charges? A. No, sir. It was strictly voluntary.

Moore stated he was paid for his work as a confidential informant. He stated the last time he was in criminal trouble was about three years before the criminal trial held in 2007.

At the postconviction hearing, Byrd presented evidence to show a preliminary parole violation information had been filed against Moore in 2005. The matter was recalled and dismissed without prejudice on September 21, 2007, the day after Moore testified in Bryd's criminal trial. Byrd claims this evidence shows Moore was untruthful when he stated his testimony was not being given as part of a deal with the State. He asserts he received ineffective assistance because defense counsel did not discover Moore was involved in a secret deal with the State and question him about it during the criminal trial.

We determine Byrd has not shown Moore's testimony was part of a secret deal. Byrd has not shown it was anything more than coincidence that the preliminary parole violation information was dismissed the day after Moore testified. Moore's deposition was taken on August 3, 2016, but he was not asked about the parole violation. Because Byrd has not shown there was a secret deal, he has not shown counsel breached an essential duty or that he received ineffective assistance due to defense counsel's failure to ask about it. *See Nguyen v. State*, 878 N.W.2d 744, 752 (Iowa 2016) (noting an applicant has the burden of establishing a claim of ineffective assistance by a preponderance of the evidence).

**C.** *Prosecutorial Misconduct*

(1) Byrd claims he received ineffective assistance because defense counsel did not object to instances of prosecutorial misconduct. He first asserts the prosecutor improperly vouched for some of the witnesses. A prosecutor should not personally vouch for or against the credibility of a witness's testimony. *State v. Graves*, 668 N.W.2d 860, 883 (Iowa 2003).

During closing arguments the prosecutor stated:

> Joe Byrd is guilty of robbery in the first degree because the evidence, the overwhelming evidence, the overwhelming reasonable, credible, believable evidence proves him guilty of robbery in the first degree. And that came from the witness stand in the form of the accomplice, Littoree Dock, Agent Hallock, Joshua Moore, Scott Peasley, Jon Borg, Sean McCullough, from the identification technicians from Des Moines, from Detective McTaggart, and we know now based on that reasonable, credible, believable evidence what happened in that house on 24th Street and how that robbery came to be.

The prosecutor also stated, "You could choose to believe Mr. Byrd. Now, Mr. Byrd's statements are at odds with the other witnesses, Ms. Malfara. You could choose to believe that. Then we are veering back into that area of fiction and how this really isn't like that."

A prosecutor may properly highlight for the jury the inconsistencies between the defendant's testimony and the testimony of other witnesses. *State v. Carey*, 709 N.W.2d 547, 557 (Iowa 2006). "[M]isconduct does not reside in the fact that the prosecution attempts to tarnish defendant's credibility or boost that of the State's witnesses; such tactics are not only proper, but part of the prosecutor's duty." *Id.* at 556. A prosecutor "is permitted to 'argue the reasonable inferences and conclusions to be drawn from the evidence.'" *State v. Morgan*, 877 N.W.2d 133, 138 (Iowa Ct. App. 2016) (citation omitted).

The prosecutor did not improperly assert a personal opinion about the credibility of the witnesses. *See id.* We conclude the prosecutor did not personally vouch for the credibility of certain witnesses or against the credibility of Byrd and, therefore, defense counsel had no duty to object on this ground.

(2) Byrd claims defense counsel should have objected because the prosecutor engaged in misconduct by permitting Moore to give false testimony.

This claim is based on his assertion Moore had entered into a secret deal with the State. We have already determined Byrd has not established by a preponderance of the evidence there was a secret deal, and has not shown ineffective assistance of counsel on this issue.

(3) Byrd asserts he received ineffective assistance because defense counsel did not object when the prosecutor presented evidence of prior bad acts. During the trial, there was evidence Moore and Byrd had engaged in a drug deal in the past and Byrd believed Moore had stolen drugs from him. This claim was addressed in the direct appeal, where Byrd claimed "he received ineffective assistance due to his counsel's failure to object to this evidence that he was involved in drug dealing." *Byrd*, 2009 WL 2392081, at *2. We concluded "Byrd has not shown he received ineffective assistance due to counsel's failure to object to the evidence in question." *Id.*

We determine Byrd has failed to show defense counsel breached an essential duty by not objecting to these alleged instances of prosecutorial misconduct. For this reason, Byrd has not shown he received ineffective assistance of counsel.

**D.** *Exculpatory Evidence*

Byrd claims he received ineffective assistance because defense counsel did not argue the State concealed exculpatory evidence. During the criminal trial, Officer Michael McTaggart testified he interviewed Byrd at the Polk County jail about the robbery. Officer McTaggart testified Byrd told him he had previously arranged to sell some crack cocaine to Moore but Moore left without paying for the drugs and Byrd believed Moore had stolen money and drugs from him. In a later

deposition, Officer McTaggart stated there was a tape of the interview with Byrd. Prior to the postconviction hearing, Byrd requested the State provide him with the audio recording of the interview. Officer McTaggart testified at the postconviction hearing he was unable to find the recording.[3]

Byrd claims the audio recording would have been exculpatory, as it would show Officer McTaggart did not testify truthfully about what Byrd said during the interview. We agree with the district court's ruling on this issue:

> [Byrd] would have been aware of the statement [Byrd] gave to McTaggart. While [Byrd] alleges the audiotape would demonstrate that McTaggart lied about their conversation at the jail, [Byrd] has failed to demonstrate how the audiotape was exculpatory or material to the issue of guilt. McTaggart was a minor witness at trial, and was not an eyewitness to the events that led to [Byrd's] conviction. Unlike McTaggart, Hallock, Moore, and Dock were all present during the commission of the crime, and were able to testify as to [Byrd's] involvement. The court finds there is not a reasonable probability that, had the alleged exculpatory evidence been disclosed, the result of the proceeding would have been different.

We determine Byrd has not established he received ineffective assistance of counsel on his claim defense counsel breached an essential duty by failing to argue the State did not provide him with exculpatory evidence.

**E.** *Juror Misconduct*

Byrd claims he received ineffective assistance because defense counsel did not address the issue of juror misconduct. He states one of the jurors did not notify the court during voir dire that the juror knew Byrd's girlfriend, Jessica

---

[3] Officer McTaggart stated he would give Byrd the recording if he found it, but the recording had not been produced by the time of the court's ruling on Byrd's application for postconviction relief.

Malfara. He states Malfara was not permitted into the courtroom until she testified, and she then informed him she had a contentious relationship with the juror.

On the day of the sentencing hearing, Byrd filed a pro se motion for new trial, claiming there was newly discovered evidence Malfara had a bad relationship with a juror. During the sentencing hearing, the court stated the issue of newly discovered evidence "can be raised later, but it's supposed to be raised with reasonable diligence, and also it must be supported by some type of evidentiary showing which I do not have here today. So I don't have the grounds to decide that issue today."

In a deposition, defense counsel testified Byrd "specifically requested that juror stay on the jury because [Malfara] and her were friends. And then after the jury verdict, he then changed course and said they were enemies."

The district court stated:

> The court finds, under either factual scenario, that [Byrd] told trial counsel to keep the jury member or that [Byrd] did not know the juror and did not learn of the alleged relationship between the juror and Malfara until after trial, [Byrd] has not demonstrated that trial counsel failed to perform an essential duty. Under the first scenario, trial counsel did exactly what [Byrd] asked of him. Under the second, trial counsel would not have been aware of any potential bias until after the trial, at which time the issue was raised before the trial court and found to be unsupported by any evidentiary showing. [Byrd] has failed to demonstrate that trial counsel failed to perform an essential duty. [Byrd] has also presented no evidence on how the juror may have prejudiced him.

We concur in the district court's conclusion Byrd has failed to show counsel breached an essential duty or that he received ineffective assistance on this ground.

**F.**     *Cumulative Errors*

Finally, Byrd contends he received ineffective assistance due to cumulative errors by defense counsel. We consider claims of ineffective assistance of counsel individually and cumulatively. *Schrier v. State*, 347 N.W.2d 657, 668 (Iowa 1984). In particular, "we should look to the cumulative effect of counsel's errors to determine whether the defendant" has established prejudice. *State v. Clay*, 824 N.W.2d 488, 500 (Iowa 2012).

We have determined only one of Byrd's claims solely on the element of prejudice—his assertion defense counsel should have argued the State concealed exculpatory evidence. On the issues where we considered breach of an essential duty, we found counsel had not breached an essential duty. Looking at Byrd's claims cumulatively, we conclude Byrd was not prejudiced by cumulative errors by defense counsel. *See id.* at 501–02. We determine Byrd is not entitled to postconviction relief based on his assertion he was prejudiced by the cumulative effect of counsel's errors.

We affirm the district court decision denying Byrd's application for postconviction relief.

**AFFIRMED.**